T. J. HEFNER v. FIDELITY & CASUALTY COMPANY OF NEW YORK.

No. 2630.    Decided June 9, 1920.

(222 S. W., 966.)

### 1.—Insurance—Accident—Total Disability.

An accident insurance policy providing indemnity against "immediate, continuous and total disability that prevents the assured from performing any and every kind of duty pretaining to his occupation" should be reasonably construed, and not held to the meaning of its strict letter, nor to require complete loss of all physical and mental capacity. Evidence considered is held to show such total disability of a lawyer to practice his profession to have resulted ultimately, though not immediately from an accidental injury. (Pp. 606, 607, 613).

### 2.—Same—Immediate Result.

In an action on an accident insurance policy indemnifying a lawyer against "immediate, continuous and total disability" from performing any duty pertaining to his occupation, evidence here considered showing that his injury was at first supposed to be slight, and that he continued for ten months thereafter to practice his profession before the results developed, is held not to show such "immediate" resulting disability, within the terms of the policy, and to justify a peremptory instruction to find for the defendant. (Pp. 607. 613).

### 3.—Accident Insurance—Notice of Claims.

Insured who, though all along attributing his condition to an accidental injury received, was led by advice of physicians that the injury was slight, his condition due to other causes, and that he would soon recover, to omit for an unreasonable time (ten months) giving notice of his claim to the insurer as was required by the policy as a condition precedent to

recovery, was debarred thereby from recovering, and a peremptory instruction to find for defendant was warranted. (Pp. 607, 608, 613).

Question certified from the Court of Civil Appeals for the Eighth District, ·in an appeal from Reeves County.

Hefner sued the Fidelity & Casualty Co. on a policy of accident insurance, and appealed from a judgment for defendant in accordance with a verdict directed by the court. The judgment was affirmed on opinions by Harper, C. J., and on motion for rehearing by Higgins, J. McKenzie, J., filed a dissenting opinion on the motion for rehearing, whereupon the point involved, the correctness of the peremptory instruction given below, was certified to the Supreme Court. The three opinions (160 S. W., 330) are here given:

*Clay Cooke* and *J. W. Parker,* for appellant.—The court erred in taking the case from the jury, and peremptorily instructing a verdict for the defendant, for the reason that the defendant introduced no evidence whatever, and that the plaintiff's evidence tended to support the issues raised by plaintiff's petition and the defendant's answer thereto, and such evidence should have been submitted to the jury. Taylor v. Flint, 59 S. W., 1126; Bowman v. Brewing Co., 43 S. W., 808; Shiffler v. Railway Co., 44 S. W., 918; Gaunce v. Railway Co., 48 S. W., 524.

Total disability within the meaning of the provisions of the policy is a total inability to do or perform some of the material things necessary in the pursuit of one's avocation or profession; and if the injured party is rendered wholly unable to perform or do some of said material things, he is totally disabled, although he may be able to perform some of the functions pertaining to· his occupation. Fidelity & Cas. Co. of N. Y. v. Getzendanner, 93 Texas, 487, and all cases there cited; Fidelity & Cas. Co. of N. Y. v. Getzendanner, 23 Texas Civ. App., 135; Continental Cas. Co. v. Wynee, 129 Pac., 16; Lobdill v. Mut. Ac. So., 38 L. R. A., 537; Turner v. Fid. & Cas. Co., 38 L. R. A, 529; Thayer v. Insurance Co., 68 N. H., 577; Young v. Insurance Co., 80 Me., 244; U. S. Cas. Co. v. Hanover, 79 Pac., 176; Wolcott v. L. & A. Assn., 8 N. Y. Supp., 263; Neafie v. Mfg. Ac. Co., 8 N. Y. Supp., 202; Hohn v. Ins. Co., 115 Mich., 79; James v. U. S. Cas. Co., 88 S. W., 125; Hooper v. Insurance Co., 5 Hurl & N., 545; Industrial Co. v. Hawkins, 127 S. W., 457; Commercial Trav. Ac. Assn. v. Springsteen, 55 N. E., 973; Mut. Ben. Assn. v. Nancarrow, 71 Pac., 423; Tower v. United Cas. Co., 8 Am. Law. Reg., 233; May on Insurance (4th ed.), 522; Kerr on Insurance, 386; 4 Joyce on Insurance, 3031; Vance on Insurance, 587; Continental Casualty Co. v. Mathis, 150 S. W., 507; Insurance Co. v. Kempner, 27 S.. W., 122; Woodmen v. Gray, 64 S. W., 801; Insurance Co. v. Mannings, 86 S. W., 618; Insurance Co. v. Davis, 84 S. W., 260; Casualty Co. v. Wade, 99

S. W., 879; Insurance Co. v. Wicker, 55 S. W., 740; Insurance Co. v. Wimberly, 108 S. W., 778; Fidelity Co. v. Lone Oak Gin Co., 80 S. W., 541; Phoenix Co. v. Padgitt, 42 S. W., 800; Mutual v. Payne, 32 S. W., 1063; British-Am. Assn. Co. v. Miller, 44 S. W., 660; Maryland Cas. Co. v.. Hudgins, 76 S. W., 745; Goddard v. East Tex. Ins. Co., 67 Texas, 69; Supreme Lodge v. Mondraski, 49 S. W. 919; New York L. Ins. Co. v. Smith, 41 S. W., 680; New York L. Ins. Co. v. Ireland, 17 S. W., 617; N. O. L. Ins. Co. v. Gordon, 68 Texas, 148; Brown v. Palatine Ins. Co., 89 Texas, 590; Groves v. Fidelity Co., 76 S. W., 811; Seeders v. Insurance Co., 54 S. W., 753; Bills v. Hibernia Ins. Co., 29 S. W., 1063.

The action of the court in taking the case from the jury and instructing a verdict for the defendant was error, for the reason that appellant's evidence tended to prove every material fact which entitled him to recover, inasmuch as it tended to show an injury covered by the policy, and that the result of such injury was an immediate, continued, and total disability, and that appellant gave notice of such injury within a reasonable time as required by the policy after the injury, in that he gave notice as soon as he discovered the injury. Same authorities as those above cited and in addition thereto upon the question of notice, the following authorities are cited: 1 Am. & Eng. Encyclopedia (2d. Ed.), 323, 324; Continental Ins. Co. v. Chase, 33 S. W., 602; Mutual Ins. Co. v. Mattingly, 77 Texas, 162; 1 Cyc., page 269, as to meaning of total disability; 1 Cyc., page 275, to the effect that the time for serving notice begins to run from the date of the discovery of the particulars of the injury, and also as to the meaning of the term "Immediate Notice."

*Neill & Armstrong* (*Nelson, Neill & Thomason* in appellate court) for appellee.—A delay of ten months in giving notice of an accident is unreasonable *per se* under the clause of the policy requiring notice to be given as soon as reasonably possible. 14 R. C. L., 1239, sec. 502; Travelers' Ins. Co. v. Scott, 218 S. W., 53; Emmentrout v. Girard F. M. Ins. Co., 63 Minn., 305; Foster v. Fid. & Cas. Co. of N. Y., 99 Wis., 447; Deer Trail Con. Min. Co. v. Maryland Cas. Co., 36 Wash., 46; Northern Assn. Co. v. Standard Leath. Co., 165 Fed., 602; Woodall v. Fid. & Cas. Co., 131 Ga., 517; Jefferson Realty Co. v. Employer's Liability Ass. Corp., 149 S. W., 1011; Hope Spoke Co. v. Maryland Cas. Co., 143 S. W., 85; Hagstrom v. American Fid. Co., 163 N. W., 670; Sherwood Ice Co. v. United States Cas. Co., 100 Atl., 572; 4 Cooley's Briefs on Insurance, 3570; Bennett v. Aetna Ins. Co., 201 Mass., 554; Scamman v. The Germania Insurance Company, 101 Ill., 621.

Appellant's testimony conclusively shows that he did not sustain a bodily injury resulting directly, independently and exclusively

of all other causes in immediate disability that prevented him from performing any and every kind of duty pertaining to his occupation. 4 Cooley's Briefs on Insurance, 3168, 3169; Continental Casualty Co. v. Ogburn, 175 Ala., ·357; Mullins v. Masonic Prot. Assn., 181 Mo. App., 394; Williams v. Accident Assn., 91 Ga., 698; Merrill v. Accident Assn., 91 Wis., 329; Preferred Ass'n v. Jones, 60 Ill. App., 106; Saveland v. Fidelity Co., 67 Wis., 174; James v. Casualty Co., 113 Mo. App., 622, 628, 88 S. W., 125.

Appellant's testimony conclusively shows that he did not sustain a bodily injury resulting directly, independently and exclusively of all other causes in continuous disability that prevented him from performing any and every kind of duty pertaining to his occupation. Continental Casualty Co. v. Wade, 101 Texas, 102.

Appellant's testimony conclusively shows that he did not sustain a bodily injury resulting directly independently and exclusively of all other causes in continuous disability that prevented him from performing any and every kind of duty pertaining to his occupation. Fidelity & Cas. Co. v. Getzendanner, 93 Texas, 487.

Appellant having failed to give appellee even verbal notice for about nine months and three weeks after the receipt of the injury, and having failed to give written notice (as required by his policy) to the home office in New York City until February 21, 1912, a period of two years and six months subsequent to the injury, and not having instituted his suit until the 23d day of March, 1912 (a period of two years and seven months), cannot recover. Art. 3378, Rev. Stat., (Act of March 4, 1891) (Art. 5713, Vol. 4, Vernon's Sayles' Texas Civil Stat., 1914); Suggs v. Travelers' Insurance Co., 71 Texas, 579; Travelers' Ins. Co. v. Scott, 218 S. W., 53; German Ins. Co. v. Luckett, 34 S. W., 173; Mead v. Phoenix Ins., 68 Kan., 432; Dolan v. Royal Neighbors, 100 S. W., 498; Travelers' Ins. Co. v. Cal. Ins. Co., 1 N. Dak., 158; Sav. & Trust Co. v. Bear Valley Ins. Co., 89 Fed., 39; Fey v. I O. O. F. Mut. Life Ins., 120 Wis., 367; Prov. Fund Society v. Howell, 18 So., 311; Paul v. Fidelity Co., 101 Am. St. Rep., 596; Law v. New Eng. Mut. Assoc., 94 Mich., 266; Lowe v. U. S. Mut. Acc. Assoc., 115 N. C., 18; Griem v. Fidelity & Co., 99 .Wis., 530; ·McFarland v. Railway Officials Acc. Assoc., 38 Pac., 347, 27th L. R. A., 48, 63d Am. St. Rep., 29.

MR. CHIEF JUSTICE HARPER delivered the opinion of the court.

Appellant filed this suit March 23, 1912, to recover on accident insurance policy for total disability not exceeding 200 weeks at $25 per week as an attorney at law, alleging that the accident happened about August 20, 1909.

The defendant answering pleaded that the policy upon which plaintiff sought to recover provided first that written notice should be given to the company as soon as might be possible, together with full particulars; . . . that this provision was a condition pre-

cedent to the right of recovery. That at least six months had elapsed after the alleged accident before notice was given. Further pleaded that the policy provided that legal proceedings could not be brought on the policy before the expiration of three months from the date of filing final proofs, and not at all unless begun within six months from the date specified for filing final proofs, and further that plaintiff filed his notice many months after the accident and that he filed no affirmative proof of disability. Defendant further alleged that the policy insured against bodily injury sustained through accidental means resulting independently and exclusively of all other causes in immediate, continuous and total disability that prevents the assured from performing any and every kind of duty pertaining to his occupation, and that plaintiff's injuries did not come within this clause of the policy, therefore he should not recover.

The parties announced ready for trial before a jury, and the evidence introduced, whereupon the court instructed a verdict for the defendant, and the only assignment of error which can be considered charges that this peremptory charge is such an error as to require a reversal of the case.

The question, therefore, for this court to pass on is, did the plaintiff, by his pleading and proof, make a prima facie case against the defendant?

The portions of the policy and all the evidence essential to this opinion we quote as follows:

"The Fidelity and Casualty Co. of New York . . . does hereby insure the person herein called Assured, against: Bodily injury sustained during the term of one year from date of this policy . . . resulting directly, independently and exclusively of all other causes, in (a) immediate, continuous and total disability, that prevents the Assured from performing any and every kind of duty pertaining to his occupation; (b) immediate (as respects the injury or as respects preceding total disability) and continuous partial disability that prevents the Assured from performing fully work essential to the duties of his occupation . . .

"Accident Indemnities.

"Total Disability.

"Art. 1. If the Assured suffers total disability, the Company will pay the Assured for the period of the said total disability, not exceeding two hundred weeks, twenty-five dollars a week.

"Art. 2. If the Assured suffers total disability for a period of two hundred weeks, and if the bodily injury causing the said total disability does not result in a loss named in the table of article 4, nor in a loss covered under article 9 or 10 but continuously after said period of two hundred weeks totally disables and prevents the Assured from performing any and every kind of duty pertaining to his occupation, the Company will pay the Assured, so long as

the Assured continuously suffers said disability subsequent to two hundred weeks and is under seventy years of age, Six Dollars, and Twenty-Five Cents a week.

''Art. 9. If the Assured suffers total disability and if during the period of said total disability and within ninety days from the date of the accident the bodily injury causing the said total disability results directly, independently and exclusively of all other causes, in permanent paralysis whereby the Assured is permanently unable to engage in any work or occupation for wages or profit; and if the Assured survives the said paralysis for a period of one year and at the end of said period is declared by competent medical authority satisfactory to the Company to be permanently paralyzed and by reason of the said permanent paralysis to be permanently unable to engage in any work or occupation for wages or profit; the Company will pay the Assured, in addition to the weekly indemnity to which he may be entitled under article 1, One Thousand Two Hundred and Fifty Dollars.

''Art. 10. If the Assured suffers total disability, and if during the period of said total disability and within six months from the date of the accident the bodily injury causing the said total disability results directly, independently and exclusively of all other causes, in incurable insanity, and if within the said period of six months the Assured is committed by the proper authorities on account of the said insanity to a state or licensed asylum for the insane and is there continuously confined for a period of two years, and within thirty days after the expiration of the said period of two years is declared by competent medical authority satisfactory to the company to be incurably insane and by reason of such insanity to be permanently unable to engage in any work or occupation for wages or profit; the company will pay to the person or persons duly authorized to receive the money on behalf of the Assured, in addition to the weekly indemnity to which the Assured may be entitled under article 1, One Thousand Two Hundred and Fifty Dollars.

''Art. 17. If the Assured suffers total disability for a period exceeding three months, the weekly indemnity to which the Assured may be entitled under article 1, 3, or 4, for any part of the entire period (provided such part is not less than three months) shall be payable upon the Assured's filing affirmative proof of total disability and of the duration therof for each part of the entire period for which claim is made. Proofs covering the entire period of total disability must be filed as hereinafter set forth.

''Art. 18. Written notice of an accident on account of which a claim may be made must be given to the Company at its home office in New York City, as soon as may be reasonably possible, together with full particulars thereof and the full name and address of the Assured. Like notice of bodily injury or death on account of which

a claim is to be made must be given to the Company as soon as may be reasonably possible after the occurrence of the accident causing such bodily injury or death. Affirmative proofs in writing must be filed with the Company as follows:

"Section 1. Accident Claims.—Affirmative proofs of death, dismemberment, loss of sight, total or partial disability, and the duration therof, must be filed with the Company within two months from the time of death or of dismemberment or of loss of sight or of the termination of the period of total or partial disability for which claim is made. Affirmative preliminary proofs under articles 9 and 10, must be filed with the Company within two months from the date of the beginning of paralysis and affirmative final proofs under said articles must be filed with the Company within two months from the date of the final examination required under said articles.

"Art. 19. Legal proceedings for recovery hereunder shall not be brought before the expiration of three months from the date of filing final proofs at the Company's home office, nor brought at all unless begun within six months from the date specified herein for final proofs. If any limitation set forth in this and the preceding article is prohibited by the statutes of the state in which this policy is issued, the said limitation shall be considered to be amended to agree with the minimum period of limitation permitted by such statute.

"Art. 23. The terms, bodily injury, total disability, partial disability, dismemberment, loss of sight, and death, are defined in the insuring clause, and as so defined shall be understood wherever used in this policy."

T. J. Hefner, plaintiff, testified: "I live in Reeves County, Texas. My occupation is that of lawyer. I happened to an accident August 20, 1909, at my home in Pecos, Texas. Some carpenters were raising my house several inches and had dug and left a hole uncovered; that evening after dark in going to a hydrant in the yard for water I stepped, with my left foot, into this hole and went down with considerable force; when I straightened up I felt a keen pain in my left side, just above the hip bone, and for several weeks it was located in left side and hip but ultimately worked around into my back. It grew worse until July, 1910, when I lost the use of my limbs. I could not say definitely and positively that I realized that my continued suffering and continued pain and ailment was the result of that accident until the latter part of June or first of July, 1910, that is, I did not realize the seriousness of the injury until that time, about ten or eleven months afterwards. In answer to the question whether or not I attributed, immediately after the accident, the accident itself as the cause of my continued injury and suffering, or to other causes, will say, I always connected the hurt or injury with the accident, it was a case of 'I will be better tomorrow, and will be all right next week,' and it went

along that way for several weeks before I consulted a physician at all. I think it was in October or November when I went to Dr. Camp's office and told him how I was affected, and he told me I was suffering from rheumatism and prescribed for me. I took the medicine prescribed until some time in November or December, got no relief, then consulted Dr. Vinsant, told him how I was affected and was suffering, and after examination he told me he thought my trouble was from a wrench or sprain in the lumbar region of the spine. In February, 1910, an osteopath by the name of Wright examined me and told me that my trouble was due to a wrench or twist in the back, advised me that it was not a serious hurt and that he thought a few treatments would relieve me. I took his treatment 18 or 20 days. When I left him he told me he thought I would get all right without any more treatment. I returned home, but got no better. Then about the 12th or 14th of April, 1910, I went to Dr. Means in Dallas; he made what I call a pretty thorough examination; he told me he was in doubt about what was the cause of the trouble. I told him to call in another physician or two and he asked me to wait a few days and let him study my case. After three or four days he told me my trouble was due to nerve tumor or fractured or ruptured nerve. Also he told me that he did not regard the trouble as serious; but at the end of a month or six weeks I was in a worse condition, that is so far as my injury was concerned, than when I went to Dallas. At the end of six weeks from the time I got to Dallas my left leg gave signs of giving down, and I called his attention to it, and it kept getting worse, and then he told me that he was convinced that my injuries were serious and said it may be twelve or fifteen months or possibly two years before you recover. That was the last of June of first of July, 1910. Then it was that I realized for the first time the seriousness of my condition, and I gave notice to the insurance company of the injury a short time afterwards. Gave the notice in writing. I had never been advised or apprised prior to this time that the accident really was the cause of the trouble. Understand me, I personally attributed the injury to the accident all the time, but the doctors took a different view and so advised me, and I believed what they said. The reason I did not give notice to the company before was at first it was a case of 'I will be better tomorrow, and will be all right next week,' until the pain became so severe until I consulted a physician, and he told me it was rheumatism, and I thought from the advice of the physician that the trouble was not serious and did not, as I said, realize how serious it was until Dr. Means' final diagnosis. As to what extent the accident had totally disabled me from performing any or all of my work as a lawyer, I suffered intense pain in my left side and hip from the time of the accident; could not do anything that required physical exertion, such as stooping, squatting, sitting,

getting to my feet, things of that kind. I was unable to do any work in the library, such as looking up and collating authorities, and did not undertake to do any of that sort of work from the time of the injury; and never after that was able to take charge of and conduct the trial of lengthy cases in court. I was frequently present during the trial of cases and assisted so far as I could, but those were some of the things I could do, and there were a great many things I could not do. And the things I have mentioned were necessary to be performed as a practicing lawyer, and the disabilities have continued on down to the present time, two and a half years. The only way I can now get around at all is in a roller chair and somebody must push me, and be lifted and carried up stairways. The duties of an attorney at law are the preparation of cases for trial, the trial in the courts, giving legal advice, writing contracts, deeds, etc., preparing cases for appeal, writing briefs for appellate courts, and so on. When Dr. Means told me what he did about the latter Part of June, 1910, I sent to I. Reinhardt & Son's office in Dallas for an information blank. When I got back to Pecos a few days afterwards I filled it out and mailed it to the company's agents at Dallas, together with a letter explaining the delay. I had paid the premium on the policy. I have not been paid anything for the injuries suffered. So far as I know the company made no investigation of the accident. There was nothing to prevent them doing so.''

On cross-examination: ''Yes, I stated in my depositions taken in 1912 that the injury resulted in immediate physical pain of a severe type, so severe that it was difficult for me to walk or sit down or rise to my feet, and that is substantially correct.

''In answer to the interrogatory: State whether as a result of the said accident, you have been prevented from performing any and every kind of duty pertaining to your occupation? I said Yes, since April, 1910, I have been. Prior to that time and dating from the time of the accident I was not prevented from performing some of the duties required of me. As to others, I was prevented and totally disabled. That I may not be misunderstood, I was able to perform in a way all the duties required of me, except the following: Was unable to do anything that required continuous physical effort or exertion; for that reason, I was unable to do any work in the library, could not look up, examine or collate authorities bearing upon legal questions, was unable single-handed to conduct the trial of important long, drawn-out cases, was unable to attend court outside of Reeves County, other than in Ward County. I gave notice to the company June 15, 1010. I now live at the place where the accident happened, and lived there when I gave notice. Some of the men who were doing the work on my house at the time of the accident are here in Pecos now, and my family are all still living here, also Dr. Camp and Dr. Vinsant.''

The physicians testified that plaintiff was unable to use his lower limbs by reason of injuries to the spine, which could have been caused by stepping in a hole, as described by the plaintiff, and that it could not be caused except from some injury of that special kind."

The first question is: In view of the provisions of the policy, and in the light of the evidence, should it be held that appellant was in a state of total disability that prevented him from performing any and every kind of duty pertaining to his business as a lawyer, as a matter of law?

Stress is laid upon the clause of the policy which reads: "Insured against bodily injury sustained through accidental means resulting directly, independently and exclusively of all other causes in immediate, continuous and total disability, that prevents the assured from performing any and every kind of duty pertaining to his occupation."

When parties enter into contracts, it must be assumed that they intended that the happening of certain events or contingencies thereafter would create liability. Contracts for which valuable considerations are received must mean something and have effective force. The occupation of a lawyer calls for both mental and physical exertion. If "total disability" means that he shall literally be totally unable to perform any part of his business, then the accident must cause entire suspension of his mental faculties and also total loss of physical power to move in the minutest detail of the profession, even to the ability to pick up a book or to turn the leaves thereof if laid on a table in front of him. If this be a proper construction of the words, then in this case the appellant was only insured against death. To interpret the clause in its contractual sense, as defendant seeks to have us do, would render the contract utterly useless to an assured, and would be nothing short, practically speaking, of collecting a premium without rendering anything in return. So equity and good conscience impels the construction that the disability meant is a disability as to the performance of any substantial part of the business. The testimony tends to show that the total disability was "immediate and continuous."

Plaintiff testified that "from the time of the accident I was not prevented from performing all of the duties required of me in my profession, but as to some of them I was totally disabled," and named the things which he was totally unable to do, which is sufficient to raise the issue and to require a charge submitting it to the jury.

Appellee contends that no sufficient notice was given, and if the notice was sufficient, then it was not given within the time prescribed by the policy.

The undisputed evidence is that a notice in writing was delivered to the agents of the company in Dallas, Texas, and that it after-

wards reached the New York office. Art. 18 and section 1 of the policy above quoted in full, provide that "(a) Written notice of an accident on account of which a claim may be made must be given to the Company at its home office in New York City, as soon as may be reasonably possible. (b) Affirmative proof of death . . . total or partial disability . . . must be filed with the Company within two months from the time of death ﹕ . . ﹕ or of the termination of the period of total or partial disability, for which claim is made.

"Affirmative preliminary proofs under article 9 and 10 must be filed with the Company within two months from the date of the beginning of the paralysis, . . ."

"Notice of the accident must be given as soon as may be reasonably possible," is the only notice with which we are concerned, and we find the weight of authority to be to the effect that ten months, as in this case, was unreasonable *per se.* That notice in compliance with the policy was a condition precedent to recovery. We therefore find that the trial court did not err in instructing a verdict. The judgment of lower court is therefore affirmed.

ON REHEARING.

MR. JUSTICE HIGGINS delivered the opinion of the court.

Chief Justice Harper and myself concur in the view that the motion for rehearing herein should be overruled. He is of the opinion that notice of the accident was not given within the time prescribed by the contract of insurance, this being the ground of affirmance assigned in the original opinion. For reasons hereinafter stated, I too, am inclined to the view that the notice came too late, and am of the further opinion that the case should be affirmed for a reason not set forth in the original opinion, and upon which I shall briefly state my views.

The suit is based upon that provision of the contract insuring against bodily injury sustained during the life of the policy and resulting directly, independently and exclusively of all other causes, in "immediate, continuous and total disability that prevents the Assured from performing any and every kind of duty pertaining to his occupation." I concur in the view expressed in the original opinion that the evidence discloses that as a result of an accident occurring on August 20, 1909, the Assured eventually became totally disabled from performing the duties pertaining to his occupation within the meaning of the contract. It is true that by applying the strict letter of the contract, the evidence does not disclose such a total disability as would prevent him from performing any and all duties incident to the practice of his profession, but I think the clause should be reasonably construed, and so construing the same, he has become totally disabled. A literal interpretation

of the contract, with reference to this phase of the case, would require a complete loss of all physical power and mental capacity—in fact, it would scarcely happen that one could live and bring himself within the literal language of the contract.

It will be noted, however, that liability attaches not only in case of continuous and total disability, but the same must be an immediate result of the injury, as well. Appellant was a practising attorney and the undisputed evidence discloses that after the accident on August 20, 1909, he continued for several months to perform many of the duties incident and pertaining to the practice of law. He testified that for some months he was able to perform in a way, all of the duties incident to his profession, except that he was unable to do anything requiring continuous, physical exertion, such as working in the library, examining and collating authorities, and was unable alone to conduct the trial of important and long, drawn-out cases. He states that he attended his office with more or less regularity until March or April, 1910, and did regularly all of the things to be done with the exception noted; that while he labored under difficulty, he nevertheless, went ahead and did it. He states that he did considerable work in the office and assisted in the trial of several cases after the accident, and made one or two trips in a buggy to Ward county with his law partner. He was also present at the trial of a case in El Paso County, which continued for nine days. He took no active part in the conduct of this trial, but made an argument to the jury. He was also present and took part in the trial of a case referred to in the evidence as the Beason-McKenzie case. It seems that Appellant was also the County Judge of Reeves County and presided over the October Term, 1909, and the January Term, 1910. The facts detailed above are undisputed and are testified to by Appellant himself, and to my mind, it clearly shows that his bodily injury sustained on August 20, 1909 can in no wise be considered such an "immediate" total disability as is covered by the contract. Williams v. Preferred, etc., (Ga.), 17 S. W., 982; Laventhal v. Fidelity, etc., (Cal.), 98 Pac., 1075; Continental Casualty Co. v. Ogburn (Ala.), 57 So., 852; Pepper v. Order, etc., (Ky.), 69 S. W., 956; Merrill v. Ins. Co. (Wis.), 64 N. W., 1039.

Adverting now to the matter of the notice of the accident given to the company, it will be seen from what has been said above that recovery can be predicated only upon the theory that the injury resulted in an immediate disability. Appellant stated in his testimony that he had at all times attributed his condition to the fall which he received on August 20, 1909, and justifies his failure to give notice to the Company because of the advice of his physicians that his injuries were slight and attributable to other conditions. But if there was an immediate and total disability from the date of the accident, I do not think that the delay until June 15, 1910, in

giving the written notice provided for can be excused because of the advice of physicians. The right to demand this notice is an important and valuable one to the Company, and if there was an immediate and total disability,. the cause of which Appellant had reasonable ground to believe, and did believe, was due to his injury, it was his duty to give the notice within a reasonable time. The delay noted was such an unreasonable one as would bar his right.

There is not the slightest intimation of any fraud or deception whatever in the claim asserted in this cause, nor any contention that the deplorable physical condition of Appellant is not due to the bodily injury which he sustained on August 20, 1909, and it is a case where the facts loudly cry for relief against the strict and harsh provisions of the contract; but considerations of this kind can have no determining influence in the decision of the case, and for the reasons indicated, I concur in the view that the motion for rehearing should be overruled.

Chief Justice Harper concurs in the views here expressed.

## DISSENTING OPINION.

MR. JUSTICE McKENZIE delivered the opinion of the court.

I am of the opinion that the evidence raises an issue of fact which should have been submitted to the jury, as to whether the injury sustained from the accident resulted in "immediate, continuous and total ·disability." The policy, when construed as a whole, ·clearly insures against injury from an accident of the kind suffered by the Appellant. The original opinion on file in this cause, to my mind, reaches the proper result or conclusion as to Appellant's right to recover for total disability, and to have the issue properly submitted to the jury.

The majority of the court have decided that the evidence affirmatively shows that notice of the accident was not given in proper time. The term "reasonably possible," as used in the policy, and as same is applied to notice of the accident, means only that notice of the accident must be given within a reasonable time after its happening. To determine what is a reasonable time, we are required to look to the particular case, viewing it in the light of all the attending circumstances. If, however, the term "reasonably possible," as used in the policy, should mean a period of time of shorter duration than prescribed by R. S. 1895, art. 3379, as amended by Acts of 1907, p. 241, then the stipulation as to notice is void. Maryland Casualty Co. v. Hudgins, 72 S. W., 1047; Aetna Life Insurance Co. v. Griffin, 123 S. W., 432; Royal Casualty Co. v. Nelson, et al., 153 S. W., 674.

By the Statute, any stipulation requiring notice, which, when viewed in the light of all the circumstances of the case, is not reasonable, is void. The policy provides however, as a saving clause,

that any limitation stipulated for, which contravenes a Statute of the State where the policy is issued shall be ignored and the shortest period of limitation allowed by Statute shall become a part of the policy. That part of article 3379, *supra,* which is applicable to this cause, reads as follows:

"No stipulation in any contract requiring notice to be given of any claim for damages as a condition precedent to the right to sue thereon shall ever be valid, unless such stipulation is reasonable, and any such stipulation fixing the time within which said notice shall be given at a less period than ninety days shall be void."

It is then expressly provided that the time for giving notice of the accident must be reasonable. Also, any stipulation requiring notice to be given within a less period of time than ninety days shall be void. The ninety day provision is intended to prevent any stipulation in the policy of a shorter period, whether reasonable or unreasonable. The intent and purpose of the Statute is clearly to the effect that the stipulation as to time of giving notice must be reasonable, and necessarily, as to what is a reasonable time, must be considered in the light of the facts of each case. The stipulation must be reasonable, even though the time of giving notice may exceed the period of ninety days. Notice of an accident, however, is not required until Assured, by the exercise of ordinary care, has first ascertained that the injury complained of is the result of such accident Phillips v. U. S. Benevolent Society, 79 N. W., 1; People's Mutual Accident Association v. Smith, 12 Am. St. Rep., 871.

In the light of the evidence, I contend an issue of fact was raised which should have been submitted to the jury upon the question of the time of the giving of the notice of the accident. Appellant's evidence, in part, is as follows:

"I again saw Dr. Vinsant, and explained to him that my trouble was getting worse and worse all the time, rather than better. I told him I was growing no better, but that I was growing speedily worse, and in that conversation I told him what Dr. Camp had previously told me, that it was rheumatism; and that I had about made up my mind to go to either Mineral Wells or to the Gills Wells at Dallas for the purpose of taking a course of baths, and asked him what he thought about it, and he told me he thought it would be a good idea, that perhaps the baths would relieve the trouble to some extent. He rather at that time insisted on my burning my back. I told him I had made up my mind that I was going to the Wells for the purpose of taking the baths, and would leave within a day or two, and I did not care to take the burning then. He then advised me to go on and take the baths, and if the baths afforded me no relief that after I returned to Pecos he would try the burning process, by burning my back, to see what relief I could get from that. So sometime in April, I do not remember

just when, my recollection is about the 12th or 14th, somewhere, I did go to Dallas, expecting to take the baths at the Gills Wells, which I did while I was there; but on reaching Dallas I was suffering so intensely I at once called in a physician, called in Dr. E. A. Means of Dallas. He made what I thought a pretty thorough examination. I do not remember that he told me after he made his examination just what the trouble was, or, rather, he said that he was in doubt as to what the trouble was. I then told Dr. Means that it was my intention to call in another physician or two, that there was something radically wrong with me, and I wanted to know what it was, and if there was any relief, I wanted it. He then requested me not to call in another physician under three or four days; said, you give me three or four days in which to diagnose your case, and then you may call in as many physicians as you please. I granted his request. So at the end of the third or fourth day he told me that he thought my trouble was due to nerve tumor, or rather, to a fractured or ruptured nerve. He told me he did not regard the trouble as being at all serious, and that in his opinion in the course of a month or six weeks, I would return home a sound man; and he began treating me; but at the end of the month' or six weeks I was in worse condition in some respects; that is, so far as my injury was concerned, I was in worse condition than when I went to Dallas. At the end of six weeks from the time I went to Dallas, my left limb showed signs of giving down, and I called his attention to it, and it kept getting worse, and finally he told me. I am now convinced that your injury is of a more serious character than I first thought; your limb shows signs of giving down. and in that event, it may be twelve or eighteen months or possibly two years, before you recover the use of your leg. This date was about the last of June or the first of July, 1910. I cannot remember positively as to the date, but it was about the last of June or the 1st of July. Then it was that I realized for the first time the seriousness of my condition; and I gave notice of the injury a short time after; I think only a few days after. When Dr. Camp advised me that I had rheumatism, I supposed it was rheumatism, and took treatment for rheumatism. Yes, the notice which I gave to the company was in writing. The examination made by Dr. Means at Dallas about which I have testified was first made in April, but it was the latter part of June or the first of July, 1910, when he advised me. I had never been advised prior to this time and had never been apprized, prior to this time, that the accident really was the cause of the trouble. Understand me, I personally attributed the injury to the accident at the time, myself, but the doctors seemed to take different views, and so advised me and when they advised me differently, I certainly believed what they said. I have virtually stated heretofore, gentlemen, the reason why I never gave notice to the Company any sooner than I did. The reason was, at first it was a

case of 'I will be better tomorrow and will be all right next week' and it went along that way for several weeks, until the pain became so severe that I thought it might be best to consult a physician with reference to my trouble.    Dr. Camp, of this place, was the first physician that I consulted, and he told me I had rheumatism.    When he told me that, I thought possibly I might be mistaken about my trouble being the result of the accident.    Later on I consulted Dr. Vinsant, as already stated, and he stated he thought my trouble was due to a slight wrench or twist of the lumbar spine or muscles of the back.    He did not regard it as being serious, and thought I would be all right in a little while, by using the hot applications and wearing the abdominal support.    Later on I consulted another physician, an osteopath in El Paso;    he said that the injury was slight and told me that treatments that he had given me would cure the trouble without further treatment, he thought, and I supposed when I left El Paso that I was practically well, from what he told me.    I was still suffering pain, of course.    Later on, I consulted Dr. Vinsant again, and he was still of the opinion that the trouble was due to a slight wrench or sprain, and advised me that wearing an abdominal support constantly would in all probability relieve the trouble.    So I naturally supposed the trouble was not serious, and did not know how serious it was until a month or six weeks after I had been taking the treatment at Dallas, under Dr. E. A. Means.    When my limb began to show signs of giving down he advised me that the injury was of a more serious character than he first thought;    that in all probability if my leg went down it would be eighteen months and probably two years before I recovered the use of it.    Then it was that I realized the seriousness of my injury, for the first time;    a short time after that I gave notice to the defendant.

"Understand me, that personally, I always attributed my injury or hurt to that accident;    I thought it might be, but did not know positively;    I had no means of knowing;    until I was advised by a physician ultimately, that it was that.    One doctor pronounced it rheumatism, and another pronounced it a sprain, and first one thing and another."

It appears from this evidence that the Appellant did give notice as soon as he ascertained that the injuries were caused by accidentally stepping into the hole.    If I am correct in the above views, Appellant has complied with the requirements of the policy, and did give notice within a reasonable time after he ascertained that the injuries were the result of the accident.    He was not even required to resort to the protection clause of the Statutes, as to the time of giving the notice of the accident if the construction which I have given to the policy is correct and which must have been the one understood by the parties when they entered into the contract.

It it a well established, general rule that a policy should be liberally construed;    that all its provisions, conditions and excep- ·

tions which in any way tend to work a forfeiture, should be construed most strongly against the insurer, for whose benefit they are inserted, and most favorably toward the insured, against whom they are meant to operate. A policy should be given a fair, business-like, common-sense interpretation. To construe it literally would be to give a meaning different from that which was understood by the parties. An insured should not be required to give notice of an accident without there was a resultant injury of a substantial nature, sufficient to justify a claim for compensation under the policy. On the other hand, an insured should not be required to give notice to the Insurance Company of an injury which he had not ascertained was the result of the accident. An honest person is to be commended, rather than condemned, in not giving notice of an accident, which under ordinary circumstances, is not thought likely to result in such an injury as to justify him in making a claim against an Accident Insurance Company. The giving of notice of every accident, regardless of its trivial nature before ascertaining whether the accident is going to result in causing a substantial injury, does not appeal to me to be just, and I do not think it was even contemplated by the parties when they entered into the contract of insurance, that notice of every trivial accident should be given to the Company. Primarily, then, the question as to whether notice has been given within a reasonable time is for the jury. To become a question of law, for the Court's decision, the delay in giving the notice must be such that by reason of its duration, it is clearly unreasorable.

In Phillips v. U. S. Benevolent Society, *supra*, it was held that where a policy requiring notice of an accident to be given within five days thereafter, a notice given within five days after the Assured ascertained that the accident was the cause of the injury was sufficient. In People's Mutual Accident Association v. Smith, *supra*, it was held that notice of an accident causing the loss of the sight of one eye need not be given until it has become reasonably certain that the sight of the eye has been lost, the claim being for such loss. Notice, then, of an accident should not be compulsory to a recovery until it is first determined that the accident is the cause of the injury. In the instant case, I think it clearly appears from the record that the Assured did give notice of the accident and of the injury within a reasonable time after it was determined that the accident was the cause of the injury. Common sense and reason should not and would not require the giving of notice at an earlier date.

As to whether the Assured was acting as a prudent man in the determination as to whether or not the accident was the result or cause of the injury is a question for the jury, and comes clearly within the rule requiring issues of fact to be submitted to the jury.

If I am correct in the views above stated, then by the very terms of the policy, it follows that a cause of action would not arise until

notice had been given, and it appearing from the record that two years had not elapsed from the time that Appellant gave notice of the accident and resulting injury before bringing his suit, the plea of the Statute of Limitation would be unavailing. For the reasons indicated, I am of the opinion that this cause should be reversed and remanded for a new trial.

MR. JUSTICE GREENWOOD delivered the opinion of the court. The Court of Civil Appeals has certified the question as to whether the trial court erred in giving a peremptory instruction for appellee.

We answer that there was no error in the action of the trial court for the reasons given in the opinion on rehearing by Associate Justice Higgins.