### KEMPER v. POLICE & FIREMEN'S INS. ASS'N.
### No. 1508—5803.

Commission of Appeals of Texas, Section A.
Jan. 6, 1932.

Charles T. Haltom, of San Antonio, for plaintiff in error.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, for defendant in error.

CRITZ, J.

We refer to the parties to this suit in the order in which they appeared in the district court; to Mrs. Kemper as plaintiff, and the insurance association as defendant.

The plaintiff sued the defendant, a fraternal benefit association, duly incorporated, to recover $2,000 alleged to be due as insurance on the life of William H. Kemper, deceased husband of the plaintiff, on a contract of insurance issued by the defendant to the deceased during his lifetime, in which certificate the plaintiff was named beneficiary. Trial in the district court with a jury resulted in a verdict and judgment for the plaintiff

for the full amount of the policy. On an appeal by the defendant, this judgment was reversed by the Court of Civil Appeals and judgment rendered for Mrs. Kemper for $200. 28 S.W.(2d) 1111. Mrs. Kemper brings error. The policy of insurance made the basis of this suit contains, among others, the following provisions:

"Any and all such payments or liability to pay shall be and is in accordance with, subject to, each and all of the provisions of the by-laws of said association and of the provisions of any and all amendments, alterations and new issues of said by-laws, which said by-laws are hereby referred to and made a part hereof as fully as if they were recited at length over the signatures hereto affixed as soon as such amendments, alterations or new issues of said by-laws respectively are or may be duly adopted, and the said William H. Kemper hereby and by the acceptance hereof agrees to abide and be bound by said by-laws and each of them and by any and all lawful amendments, alterations and new issues thereof or of any of them."

"It is hereby agreed by the member holding this certificate that the certificate, the charter or articles of incorporation, the constitution and laws of the society and the application for membership and medical examination, signed by the applicant, with all amendments to each thereof, shall constitute the agreement between the society and the member and any changes, additions or amendments to said charter or articles of incorporation, constitution or laws duly made or enacted subsequent to the issuance of this certificate shall bind the member and his beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

"Whenever any member of this Association in good standing shall, through external, violent and accidental means, receive bodily injuries which shall, independently of all other causes, result within ninety days from and after the date of such accident, and independently of all other causes, in the death of said member, or of the loss of both legs, or the loss of both arms, or the loss of one arm and one leg, or the loss of an arm or a leg, or the irrecoverable loss of the sight of both eyes, or one eye, there shall be paid to said member, or to the beneficiary of said member in case of loss of life the following benefits. * * * If the Member's certificate is for $2,000 the Benefits shall be as follows:

"A. For loss of life $2,000.00 * * *

" * * * And provided further that the above Benefits for loss of life shall be payable only in the event that the disability resulting from said injury shall be total and immediate and shall be continuous from the time of the injury to the time of the death of said member."

"There shall be payable to the beneficiary named herein, at the death of said member, if living at the time of such death (except by accident) the sum of $200.00 within ninety days after receipt by the said association of satisfactory proof of the death of said member."

"I also agree that my physicians shall give evidence, whenever required, concerning any alleged injury or cause of death, and waive all provisions of the law to the contrary, and that I will permit the physician of this Association to make such examination as may be deemed necessary. And I further agree that in case I take additional accident insurance, I will notify this Association, failure to do which shall invalidate any claim on account of accidental injury received during such default."

The facts show that about January 31st. or early on February 1, 1928, William H. Kemper received injuries which resulted in his death about twenty days later. At the time of such injuries the policy was in full force, and the deceased in good standing as a member of the association.

With reference to the injury itself and its resultant effects, immediately and later, the evidence is, in law, sufficient to establish the following facts: That William H. Kemper was a captain in the city fire department at the time of his injury; that on the date above shown there was a fire in a drug store which was attended by the insured in his capacity as a fireman; that the fire was in the prescription room full of drugs of various kinds; that insured entered this room during the fire in the performance of his duties; that chemicals were used in fighting this fire; that the chemicals so used and the chemicals and drugs contained in the building, together with the heat, caused the burning building to be full of gas and fumes; that some of the men fighting the fire wore masks to protect themselves from these fumes and gas; that the insured wore no mask; that the gas and fumes were breathed by insured for about an hour; that insured vomited at the fire while he was fighting it; that when insured got back from the fire he was coughing and throwing up phlegm, and complained about his chest and throat, saying that they were hurting him; that insured worked as a fireman thereafter for several days; that during such period insured was at all times feeling badly, and his chest and throat were very sore and hurting him, caused by the effects of the gas and fumes he had breathed at the fire; that he was in this condition at all times from the time of the fire to the time of his death; that while he continued to work he was hoarse—"whisper-like"; that in-

sured was sick from the time of the fire until his death some twenty days later; that insured finally went to the hospital about a week before his death, and there remained until he died; that at times between the time of the fire and the time he went to the hospital, while he was trying to carry out his duties, he would become so sick that he would have to go home, but would thereafter come back to his work; that at all times between the fire and his death insured was sick and feeling badly, and only with difficulty and effort kept up and going; that about thirteen days after the fire insured was sent to the hospital where he died in about a week; that deceased died of pneumonia, which was brought on and caused by breathing the fumes and gas at the fire; and that while pneumonia was the exciting cause of death, the predisposed cause was the gas irritation and inflammation of insured's lungs. In other words, to put it in simple language, the gas and fumes produced irritation and inflammation of the insured's throat, lungs, and respiratory organs, and these injuries culminated in pneumonia, from which the insured died. The testimony, taken as a whole, is amply sufficient in law to justify the jury in the fact conclusion that, while insured continued to go to work for several days after he received his injuries, he should not have done so, and during all such time was a sick man, who by his own will power was forcing himself to perform duties which he was too sick to perform.

With the evidence in the above condition, the jury found in response to relevant questions:

(a) That insured received the bodily injuries alleged by the plaintiff on the occasion of the fire; (b) that insured's death resulted from such injuries independently of all other causes; (c) that the injuries complained of resulted in total disability; (d) that such disability was immediate; (e) that such disability was continuous from the time of the injuries to the time of death.

Based on the above verdict, the trial court entered judgment for the plaintiff. The Court of Civil Appeals reversed this judgment and rendered judgment for the defendant, holding that this case is ruled by the holding of the Supreme Court in Continental Casualty Co. v. Wade, 101 Tex. 102, 105 S. W. 35. We think the Court of Civil Appeals is in error in this holding, and that the facts of this case are clearly distinguishable from the facts in the Wade Case. In the Wade Case, the opinion of the Court of Civil Appeals, which is found at 99 S. W. 877, 878, shows: "The evidence is undisputed that Bishop Green, while working at his occupation as a freight handler, on January 31, 1903, was physically injured by the weight of a heavy crate of glass being accidentally thrown upon him; and as the proximate cause of the injury he died on April 6, 1903. He received said bodily injury 'through external violent and purely accidental causes,' which, as aforesaid, proximately resulted in his death. It was also shown that he was hurt on Saturday, about 2:30 o'clock p. m., January 31, 1903; that he laid off about 15 minutes and continued to work till 6 o'clock, when his work was done; and that he returned to his work the following Monday and continued at it until March 25th following, when he died in consequence of the accident."

The opinion of the Supreme Court, supra, accepts the fact finding of the Court of Civil Appeals, except the opinion of the Supreme Court shows that Green worked "as usual" for 52 days after the accident.

Under the above facts, our Supreme Court, speaking through Judge Brown, held that under a contract similar to the contract here involved, the evidence showed, as a matter of law, that while a disability occurred at once and at the time the accident happened, there was no continuous total disability to engage in business from the time of the injury to the time of death, and that the insurer was therefore not liable. In the Wade Case, supra, it is simply shown that the insured was injured; that he was totally disabled from pursuing his labors for fifteen minutes immediately thereafter, and that he then returned to work and continued to work "as usual," for fifty-two days when he died. There is nothing in the opinion in the Wade case to show the condition of the insured during the fifty-two days, except the opinion says he continued to work "as usual."

In the case at bar, it is shown that the insured was injured by breathing gas and fumes at the fire; that he was injured in his throat and lungs, and we presume his respiratory organs, by breathing these fumes and gas; that the injury took place at once; and that some twenty days thereafter he died as a direct result of these injuries. It is true that the evidence also shows that insured returned to his post of duty as a fireman, and there remained for most of the time for some twelve or thirteen days; but the evidence further shows that he did so while a sick man, and while suffering great pain. In other words, we think the evidence is sufficient in law to show that the insured was simply forcing himself to remain at his place of labor, when he was unable to do so, out of a devotion to duty so common to those engaged in his calling in life.

As we understand the opinion of the Court of Civil Appeals, that court passed on a question of law and not of fact, and holds, as a matter of law, that the evidence in this case fails to show that insured was totally disabled from the time of injury to the time of death. We further understand that opinion to base its holding on the fact that that court interprets the opinion of the Supreme Court

In the Wade Case to hold that the mere fact the insured returned to his labors and performed some of the duties thereof for some time after the injury, alone, and of itself, precluded any recovery. Such an interpretation or construction of that opinion is, we think, unjustified by anything said in the opinion, as we will later demonstrate.

■■ When we come to examine the contract or policy of insurance involved here, we find that it provides in simple and unambiguous language that the benefits "for loss of life shall be payable only in the event that the disability resulting from said injury shall be total and immediate, and shall be continuous from the time of the injury to the time of death of such member." Such is the contract, and, such being the contract, there is nothing left for the courts to do but to enforce it as it is written. The association had a perfect right to prescribe the terms and conditions on which it would insure the insured against death resulting in the manner and under the conditions prescribed, and the insured had a perfect right to accept the policy as written, or to reject it. Such a rule of law is not illegal, immoral, or inequitable. However, such being the terms of the contract, does not preclude the courts from the right to construe and apply it in the light of the facts. Furthermore, in so construing this contract, it is the duty of the court to interpret it according to the well-known and well-established rules of law, and as strictly as its language will reasonably permit against the insurer.

From what we have said, it is evident that a final decision of this litigation must turn on what is meant in law by the requirement in the policy to the effect that the disability must be immediate, and total from the time of injury to the time of death.

We think that the requirements of this policy to the effect that the disability shall be immediate, and total from injury to death, should be given effect, but in our opinion a person who dies from accidental injury does not have to be flat on his back, unable to move or think, from the time of injury to the time of death in order to qualify as totally disabled between such times, within the meaning of this policy. Neither is it necessary for him to be carried from the scene of the injury on a stretcher or in an ambulance to his deathbed, in order for his beneficiary to recover on the contract. It is enough if he is in such a physical condition produced by the injury as common care and prudence would have required the insured to consider himself totally incapacitated to discharge his duties as a fireman, and the mere fact that a strong will and great courage might cause the insured to do that which he was unable to do without great physical pain and effort would not, as a matter of law, show that he was not totally disabled. The history of mankind chronicles many instances, where men have done many acts of great courage and involving great physical effort after they have received their mortal wounds, and there is scarcely an adult person living who cannot himself recall such an instance; but certainly the mere fact that he who has been wounded unto death may, by the use of a great will power, continue to function for a time does not demonstrate, as a matter of law, that he is not totally disabled from the beginning, within the meaning of the contract here involved.

■■ We think further that it is impossible to lay down an iron-bound rule by which it can always be accurately determined from a given state of facts, whether a person has been totally disabled from the time of injury until the time of death within the meaning of this contract. We do hold, however, that as a general rule it can be said that a person is totally disabled from the time of injury until the time of death when during all such time his condition is such that common prudence, and the exercise of ordinary care, would require him to desist from the performance of his duties. We think the following authorities in principle support this rule: Texas Employers' Ins. Ass'n v. Brock (Tex. Com. App.) 36 S.W.(2d) 704, 705; Fidelity & Casualty Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806; Hefner v. Fidelity & Casualty Co., 110 Tex. 596, 160 S. W. 330, 334, 222 S. W. 966; Great Southern Life Ins. Co. v. Johnson (Tex. Com. App.) 25 S.W.(2d) 1093; Hohn v. Inter-State Casualty Co. of New York, 115 Mich. 79, 72 N. W. 1105, 1106. We think further that there is nothing said in any of the above authorities which is in conflict with Continental Casualty Co. v. Wade, supra.

In Texas Employers' Ins. Ass'n v. Brock, supra, Section B of the Commission had before it a case involving the term "total incapacity," as used in the Texas Workmen's Compensation Law, article 8306, R. C. S. The trial court defined the term as follows: "In answering the foregoing issue you are charged that the term 'total incapacity,' as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual task of a workman in such a way as to enable him to procure and retain employment is regarded as total incapacity."

The insurance association objected to the above instruction, and requested the trial court to define the term as meaning that the plaintiff is unable to perform any of the duties of an average workman, and to be totally incapacitated he must be 100 per cent. disabled. The requested instruction was refused, and on appeal Section B of the Commission, speaking through Judge Short, held that the instruction given by the trial court

was correct, and that there was no error in refusing the requested instruction.

In Fidelity & Casualty Co. v. Joiner, supra, the term "total disability" was before the Court of Civil Appeals at Texarkana for consideration and interpretation, and that court held that the injuries need not be such as to physically prevent the insured from performing any of the duties pertaining to his occupation, but that it is enough if he is so injured that he cannot, as a prudent man, perform such duties. Writ was refused in that case.

In Hefner v. Fidelity & Casualty Co., supra, the following language used by the Court of Civil Appeals was expressly approved by the Supreme Court, speaking through Judge Greenwood: "The suit is based upon that provision of the contract insuring against bodily injury sustained during the life of the policy and resulting, directly, independently, and exclusively of all other causes, in 'immediate, continuous, and total disability that prevents the assured from performing any and every kind of duty pertaining to his occupation.' I concur in the view expressed in the original opinion that the evidence discloses that as a result of an accident occurring on August 20, 1909, the assured eventually became totally disabled from performing the duties pertaining to his occupation within the meaning of the contract. It is true that, by applying the strict letter of the contract, the evidence does not disclose such a total disability as would prevent him from performing any and all duties incident to the practice of his profession; but I think the clause should be reasonably construed, and, so construing the same, he has become totally disabled. A literal interpretation of the contract, with reference to this phase of the case, would require a complete loss of all physical power and mental capacity; in fact, it would scarcely happen that one could live and bring himself within the literal language of the contract."

In Great Southern Life Insurance Co. v. Johnson, supra, Section B of the Commission had before it a case in which it had to determine the meaning of the term "total disability," as used in an accident policy, and in the course of the opinion, which is by Judge Ryan, the Hefner Case, supra, was cited and quoted from, and it was again held that the term "total disability" should not be given such a restricted meaning as to require that the insured person be bereft of all physical and mental power.

In Hohn v. Casualty Co., supra, the Supreme Court of Michigan had before it an insurance case where the policy provided: "If such injuries, independently of all other causes, shall immediately, continuously, and wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation, the company will

pay the insured the weekly indemnity before specified, during the continuance of such total disablement, not exceeding fifty-two consecutive weeks."

The facts on which insured claimed indemnity under the contract, as set out in the opinion, are as follows: "Plaintiff recovered a judgment against the defendant, from which judgment defendant appeals. The plaintiff was a barber by occupation. According to his testimony, he slipped, and, in the effort to save himself from falling, he received a severe wrench in the small of his back. The next day he went to his place of business, late. He suffered pain all the time, and did some work, but not nearly what he would have done if he had been well. Saturday night and all day Sunday he applied liniment and plasters to his body, the pain going all through his body, and lay on a couch all day Sunday. On Monday he went to his shop, and attempted to do some work. He suffered such pain that he fainted away. A doctor was called, who found him nearly, if not quite, unconscious, and he was sent home in a hack. During that week he got some better, and visited his shop each day, suffering pain all the time, and occasionally working a little, but was unable to perform all the duties of his business because of the pain he suffered. On the second Saturday while at the shop, he was forced to lie down, and was taken to his home and bed, where he remained for some weeks. He got some better, and went out by advice of his physician, took some cold, and was again confined to his bed."

The court in passing on the validity of the contract, and the rule of construction to be applied thereto, quoted with approval the case of Young v. Ins. Co., 80 Me. 244, 13 A. 896, 897, where the following language was used: "A contract of insurance is to receive a reasonable construction, so as to effectuate the purpose for which it was made. In cases of doubt it is to be liberally construed in favor of the insured, that in all proper cases he may receive the indemnity contracted for. At the same time legal effect should be given to all the language used, for the purpose of guarding the company against fraud and imposture. The object to be accomplished by this contract was indemnity to the plaintiff for loss of time from being wholly disabled from prosecuting his business by an injury received as specified in the policy."

The opinion then proceeds to hold that the above facts are sufficient in law to sustain a jury finding that the insured was wholly disabled by such injuries from the time of injury, and for several weeks thereafter, from performing any and every kind of duty pertaining to his occupation, and that such disability was immediate and continuous from the time of injury. The court then proceeded to announce the rule to be that an in-

surance policy providing for the payment of a weekly indemnity during the continuance of total disability does not mean that the insured does not have the physical power, perhaps, to do something, even if he, in doing it, suffers great bodily pain. The court further held that if the insured was disabled to that extent that whatever he did caused him suffering, and compelled him to stop in a short time, it may be ·properly described as total disability.

We think the Supreme Court of Michigan properly construed the contract and announced the correct rule of law governing the application of the facts to the law.

When we come to examine the facts of the case at bar they are very similar, from a legal standpoint, to the facts in the Hohn Case, supra. In the Hohn Case, the policy required the injury to be such as to immediately, continuously, and wholly disable the insured. In this case, the policy requires "the disability resulting from said injury shall be total and immediate, and shall be continuous," etc. In the Hohn Case, the insured returned to his labors for a time, and performed some of the duties thereof, but at the expense of pain and suffering to himself. In the case at bar, the same is also true. In the Hohn Case, the Supreme Court of Michigan held the facts sufficient in law to show total disability which was immediate and continuous from the time of injury; we hold the 'same with reference to the facts of the instant case.

For the reasons stated, we recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.