## ÆTNA LIFE INS. CO. v. MOTHERAL.
### No. 14642.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 13, 1944.

Rehearing Denied Dec. 1, 1944.

John T. Pearson and John T. Gano, both of Fort Worth, for appellant.

Cal Estill, of Fort Worth, for appellee.

BROWN, Justice.

Appellee Motheral, who is suffering from an arrested case of tuberculosis, brought suit against appellant, Aetna Life Insurance Company, and alleged that appellant issued to him a contract of insurance in the year 1919 indemnifying the insured in the event that he became totally and permanently disabled; that on or about June 17, 1925, insured became totally and permanently disabled and that appellant paid him the stipulated sum of $10 per month, provided for in the contract, up and until about June 1, 1943, when appellant refused to pay him any further sum. He alleged that because of his disability "he is unable to pursue his usual vocation." He seeks to recover the unpaid monthly installments that had accrued.

The policy is made a part of the pleadings and it contains the following provision covering benefits for permanent total disability: "Six months after proof is received at the home office of the company, before the sum insured or any installment thereof becomes payable, that the insured has become wholly, continuously and permanently disabled and will for life be unable to perform any work or conduct any business for compensation or profit * * *."

Appellant specially pleaded the above quoted provisions and alleged that appellee was no longer wholly, continuously and permanently disabled and unable for life to perform any work or conduct any business for compensation or profit; and that insured is able and does perform work and conducts a business for compensation and profit, and is making a livelihood; and that appellee is only partially disabled.

Tried to a jury, the trial court gave the following instruction: "You are instructed that the meaning of the term 'total disability' is meant that the party involved has become wholly, continuously and permanently disabled, and will for life, be unable to perform any work or conduct any business for compensation or profit."

In answer to issues submitted the jury found: (1) That appellee was permanently disabled on July 27, 1943; (2) And totally disabled on such date; (3) that such total disability has continued up to January 4, 1944 (the day of trial); (3–A) that the total disability has not terminated; (4) that appellee's disability is not partial; (5) that appellant made all payments to appellee in good faith.

■ On this verdict, the trial court rendered judgment for appellee in the sum of $60 to cover six past due installments, and for $30 as attorney's fees (the amount being left, by agreement, to the trial court).

No complaint is made as to the charge. Appellant having by cross-action sought to recover the sum of $120 paid by it to appellee, the amount in controversy is within the jurisdiction of the Court of Civil Appeals, and the Insurer having appealed presents three points for consideration.

The first point asserts that the judgment should be reversed and rendered because the evidence is insufficient and fails to establish that appellee is totally and permanently disabled under the terms of the policy, and that under the undisputed facts it is clearly established that appellee, during the past several years has been able to do some work and has been conducting a business for compensation and profit.

The first case cited by appellant in support of this point is Great Southern Life Ins. Co. v. Johnson, Tex.Com.App., 25 S.W. 2d 1093, in which the late Judge Ryan wrote the opinion for the Commission of Appeals that was expressly approved by the Supreme Court.

This appears to be one of the cornerstone decisions on which many cases have been decided covering policies of insurance similar to the one before us.

In the cited case the policy provided for payment in case the insured sustained disability from disease or bodily injury "so that he is and will be thereby permanently, continuously and wholly prevented from performing any work for compensation or profit or from following any gainful occupation."

A judgment for the plaintiff was reversed and remanded solely because the plaintiff had not met the burden of proof.

We deem it necessary to call attention to the pronouncements made in that opinion. The writer thereof calls attention to the case of Hefner v. Fidelity & Casualty Co., 110 Tex. 596, 222 S.W. 966; Id., Tex.Civ. App., 160 S.W. 330, in which it is said that such a clause as is before us should be reasonably construed; that a literal construction would require a complete loss of all physical power and mental capacity and that it would scarcely happen that one could live and still bring himself within the literal language of the contract.

The opinion next takes up the case of Commonwealth Bonding & Casualty Ins. Co. v. Bryant, 113 Tex. 21, 240 S.W. 893, the opinion being written by Judge Greenwood and in which it is said that the court will not give such a literal interpretation to the language in the contract as to practically relieve the insurer of all obligation thereunder. Judge Greenwood further said: "The language of the policy is fairly and justly susceptible of the interpretation, which, we think, should be given to it, that the larger indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation." Judge Ryan in the opinion states that the rule announced by Judge Greenwood in the Bryant case applies to the Johnson case.

Judge Ryan next takes up the question of what is a "gainful occupation" and states that it is a "relative term;" that the insured's occupation and earning capacity at the time the policy was issued was in contemplation of the parties, and that what would be a gainful occupation for one may not be such for another.

The opinion then states that a prosperous merchant (such as was Johnson) with a

constantly expanding business, earning large and continually increasing profits, who, because of injuries received, is totally disabled from continuing that business and the business becomes bankrupt as a result, certainly cannot be said to be pursuing a gainful occupation, when compared with his other occupation, if he is fortunate enough to earn something that is out of proportion to his previous earnings.

 We believe that the above states the rule in Texas in such cases as the one at bar. Appellee testified that he was employed by a chain grocery store company here, in Fort Worth, when he became disabled, and that he was a "relief manager" of the grocery stores; that when any manager of any store had to be "relieved" for any cause, it was his duty to fill his place.

We are of opinion that the average person knows that it takes training, experience and ability to fill such a responsible position, but we believe that the education, training and experience of appellee and the duties of such "relief manager" should have been given to the jury, and should be fully pleaded. Furthermore, appellee did not testify to his average, or yearly, income as such "relief manager," so that the jury might be able to make some comparison as between appellee's former earnings and the earnings he has been able to make since his illness began; and that such facts should be fully pleaded.

The evidence discloses that, during the year 1943, appellee earned something more than $800 selling life insurance and that he took orders from his personal friends for printing and that appellee's brother, who conducts a printing establishment, pays him a commission for such orders; that he made something over $200 on such orders.

So far as the record before us discloses, appellee may be making as much, working only a few hours a day at selling insurance and soliciting orders for printing, as he made in the capacity of "relief manager" of the chain grocery stores company.

That the case has not been fully developed, in accordance with the rule laid down in the "Johnson case," cited supra, is clear to us. We would not be justified in reversing and rendering the case as there is no "insuperable barrier" to appellee's right of recovery. Measured by the yardstick laid down in the "Johnson case," and others

that are in accord, it seems to us that the charge defining "total disability" is too literal and therefore too liberal to the defendant. The charge should follow the holdings in the "Johnson case."

The second point urges that the judgment of the trial court rendered on the jury verdict should be reversed and rendered because the findings are contrary to and not supported by the weight and preponderance of the evidence.

We hold that it is our duty to reverse and remand and not to reverse and render.

The third point needs no discussion. It concerns the right of the insurance carrier to recover the last twelve monthly payments it made to appellee.

We have written somewhat at length in this case that originated in the Justice of the Peace Court, but it is important in that appellee may or may not be entitled to compensation for months and years yet to come, all depending upon the facts shown.

The judgment of the trial court is reversed and the cause is remanded.