### POLICE & FIREMEN'S INS. ASS'N v. KEMPER.

### No. 8436.

Court of Civil Appeals of Texas. San Antonio.
May 14, 1930.

Rehearing Denied June 11, 1930.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, for appellant.

Charles T. Haltom, of San Antonio, for appellee.

FLY, C. J.

Appellee sued appellant to recover $2,000 alleged to be due as insurance on the life of her husband, who died on February 20, 1928, his death resulting from an injury received in an accident which occurred on January 31, 1928, or early on February 1, 1928. It was alleged that William H. Kemper had paid all premiums due on the policy and had fully complied with the conditions and provisions of the policy. Appellant alleged a failure of

deceased to comply with the provisions of the policy and that his death did not come within the terms of the policy. The cause was submitted on special issues, and on the several answers judgment was rendered in favor of appellee for the amount claimed.

The facts show that William M. Kemper, deceased, husband of appellee, was at the time of his death a member in good standing of the appellant association, and had been insured against accidents therein; said company agreeing to pay Thekla Kemper, within ninety days after the receipt of satisfactory proof of the happening of accidental death, the sum of $2,000.

The jury found that deceased received the injuries while fighting a fire, and that such injuries caused his death, independently of all other causes. They also found that the injuries resulted in his "total disability" and that the injuries were "immediate" as required by the terms of the policy, and that the injuries were "continuous" from the time of the injury to the time of the death of appellee's husband. These findings as to the injuries are assailed by appellant as contrary to and unsupported by the facts.

The contract as evidenced by the policy was that the beneficiary would be paid $2,000 in case the member "through external, violent and accidental means" should receive "bodily injuries which independently of all other causes," result in death, within ninety days from and after the date of such accident. If the member should not die as a result of an accident then the beneficiary was to be paid only $200 at his death. Deceased was injured on the night of January 31, 1928, through the inhalation of smoke and fumes while fighting a fire, in the capacity of captain of the fire department of the city of San Antonio, the fire having occurred in the prescription room of a drug store at the corner of Romana street and Main avenue. The firemen were extinguishing the fire with chemicals in a very small room. It took about an hour to extinguish the fire. Deceased had no respirator to put over his nose and mouth to prevent inhaling the fumes. The latter caused Kemper to vomit at different times during the fight on the fire. He complained for several days of his chest being sore. Assistant Fire Chief Melcher testified: "With reference to any certain complaint that he made after the fire, I will state that he complained of feeling bad and saying that it hurt in his chest and throat, that was all, and he wasn't lively any more after that time." While the fire was in progress acids and different kinds of medicines were exploding. Kemper complained of his chest every day until he went to the hospital. From the time of the fire he was hoarse, "whisper-like." He grew worse and died in the hospital. Deceased had up to the time been a healthy, vigorous man who was off duty only once in twelve years, and that was when his father died. Appellee swore that he was very

hoarse after the fire and on February 13, less than two weeks after the fire, he was sent to the hospital. Deceased after the fire grew worse and was not the same man. Several witnesses swore to these facts. In answer to a hypothetical question, stating all the facts in connection with the fumes inhaled by deceased, the symptoms afterwards, the development of bronchitis which culminated in pneumonia, Dr. Ferdinand P. Herff, a physician who specializes in surgery and diagnosis, and who treated deceased after the fire, stated: "In my opinion the man developed bronchitis from the inhalation of the fumes, which developed into a pneumonic process, the area of which showed delayed resolution such as was shown by X-ray." Dr. F. H. Redmond was told all the important facts in connection with deceased during and after the fire, and was asked if in his opinion those circumstances resulted in the death of William H. Kemper, and he answered: "I would consider the fumes, gas and trouble that he had during that time would be the predisposing cause; of course, pneumonia was what we call the exciting cause that produced his death—but the predisposing cause was the gas irritation that caused inflammation of the lungs and produced pneumonia, that would be the predisposing cause; while pneumonia or infection would be the exciting cause."

The provision of the policy as to total disability resulting from the injuries, being immediate, total, and continuous up to death, is harsh, if not cruel, in its effect, and the harshness and cruelty is not lessened by the statement, such as was made by the Supreme Court in Continental Casualty Company v. Wade, 101 Tex. 102, 105 S. W. 35, 36, that the insured agreed to it and the beneficiary is bound by it. That is the modern pound of flesh theory, that cannot be avoided as in the case of Shylock. Men desire to leave money for their loved ones and insurance is perhaps the only way to many of them to accomplish their desire, and they are compelled to accept the harsh terms of the corporation written into policies or get no insurance. However, the Supreme Court in that case, in reversing the judgment of this court, held in construing similar language to that found in the policy issued in this case: "But there is no ambiguity or uncertainty in the language. There is nothing in it which indicates that Mrs. Wade was to be compensated for the loss of life of her son, Bishop Green, except upon the terms and conditions specified in the contract." This was the answer given to the language of this court, made through Judge Neill in Casualty Co. v. Wade, 99 S. W. 877, 879, where he said: "It is apparent from the first paragraph of the policy that loss of life within 90 days of the accident or injury is what is insured against, as it is from the second paragraph that the loss of one hand or one foot, if it occur within 90 days of the accident or injury, is insured.

against in that part of the policy." After endeavoring to show the absurdity and harshness of the hardboiled construction of the contract contended for, the eminent judge, in his righteous indignation, said: "It shows, if appellant's construction be given, that these accident insurance companies by their agents are going around over the country bilking the citizens of Texas out of their money under pretext that they are insuring them against injuries resulting from accidents." The cruelty of the imposition is intensified by the requirement coming from a "fraternal" organization and the helplessness of those seeking the insurance. However, what is "written is written" and this court is bound by it.

The Supreme Court, in the Wade Case, not only justified the harshness of the provision in the policy as to immediate, total, and continuous disability, but defends the propriety of the provision on the ground that it was inserted "to provide against liability for a result which could be arrived at by expert testimony, the opinions of medical men or others based upon the character of the injury and the fact of death. It was the purpose of the Casualty Company to provide for a state of physical facts by which the injury and the result should be so connected that there could be no room for expert testimony." In other words, he must be killed on the spot or so badly injured that he would have to be carried from the scene of his injuries on a litter and placed in an ambulance to be taken therefrom to his deathbed. This court does not now concur in that harsh, cast-iron construction, as it did not twenty-three years ago.

The facts show that under the ruling of the Supreme Court the injuries to deceased did not cause immediate, total disability which continued to his death. He helped clean up the rubbish in the prescription room after the fire was extinguished, then rode back to the fire station on a truck and performed his labors most of the time until sent to the hospital on February 13. Under the terms of the opinion in the cited case of Casualty Co. v. Wade, the disability was not immediate or total and appellee could not recover. While it is not exactly ascertainable from the several opinions of the Court of Civil Appeals, one of which is approved by the Supreme Court, what the position of the court was on the question now being considered in Hefner v. Fidelity Company, 110 Tex. 596, 160 S. W. 330, 222 S. W. 966, still we are inclined to believe that the approved opinion held that the words immediate, continuous, and total disability, meant such disability as prevented the assured from performing any and every kind of work pertaining to his occupation after the injury was received. That is the construction placed on the decision by the syllabus. It seems to sustain Casualty Co. v. Wade.

In deference to the two decisions of the Supreme Court, the judgment will be reversed, and judgment here rendered in favor of appellee for $200, and that she pay all costs of this appeal.