PAUL PENNELL V. UNITED INSURANCE COMPANY, INCORPORATED.

No. A-3203. Decided October 24, 1951.
Rehearing overruled December 5, 1951.
(243 S. W., 2d Series, 572.)

*David H. Brown,* of Sherman, and *Robert L. Doss,* of Denison, for petitioner.

The Court of Civil Appeals erred in holding that a jeep is not a "private passenger automobile exclusively of the pleasure car type". Also in holding that even if petitioner was not entitled to double indemnity payments which were delinquent at the time suit was filed, he is nevertheless entitled to single indemnity payments at the time judgment was rendered for petitioner. Travelers Protective Ass'n. v. Ziegler, 250 S. W. 1115; Gibson v. General Am. Life Ins. Co., 89 S.W. 2d 1070; First State Bank of Ravenna v. Barnett, 48 Texas Civ. App., 82, 106 S.W. 182.

*Freeman, Wolfe, Henderson & Bryant,* of Sherman, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

Petitioner Paul Pennell, who was accidentally injured while driving a jeep in the performance of his duties as a rural mail carrier, filed this suit against respondent, United Insurance Company, Inc., to recover indemnity of $200.00 per month,

alleging that the injury caused inability to perform each and every duty pertaining to his occupation.

The company by the term of the policy agreed to pay $100.00 per month for total loss of time caused by accidental injury and agreed further to pay double the monthly indemnity in the event of the insured's injury "while driving or riding within any private passenger automobile exclusively of the pleasure car type". The principal question in the case is as to the right of petitioner to recover the double indemnity.

The district court, after trial before a jury which found that the motor vehicle driven by petitioner was "a private passenger automobile exclusively of the pleasure car type", rendered judgment for petitioner against respondent in the total sum of $4964.00, which included double indemnity, attorney's fees and penalty.

The Court of Civil Appeals, with Chief Justice Bond dissenting, reversed that judgment and rendered judgment that petitioner take nothing, holding that petitioner was not entitled to recover double indemnity and that respondent had paid petitioner the full amount of the indemnity at the rate of $100.00 per month that was due when the suit was filed. 238 S.W. 2d 602.

The Court of Civil Appeals, after reviewing the evidence and a number of authorities, expressed the conclusion that the jeep is "an all-purpose car" and is "neither exclusively a pleasure car type automobile nor exclusively a freight-carrying type, but a combination of all"; and held "as a matter of law that the jeep involved here is not a private passenger automobile 'exclusively of the pleasure car type' and therefore not within the coverage of the double indemnity provision of the policy."

The substance of petitioner's argument attacking the above quoted holding is that there is ambiguity in the policy's description of the automobile to which the double indemnity provision applies, and that the Court of Civil Appeals has resolved the ambiguity in favor of the insurance company, contrary to the construction that respondent placed on the policy and contrary to the jury's verdict.

■ In our opinion there is no ambiguity. The policy provides for double indemnity when injury is sustained by the injured "while driving or riding within any private passenger automobile exclusively of the pleasure car type". The words are

simple. We do not find, as petitioner contends, that the word "exclusively" causes the description to be ambiguous or that ambiguity arises from the "placement" of that word. "Exclusively" gives emphasis to the description as an automobile of the pleasure car type. We believe the words clearly mean that the double indemnity provision applies only to automobiles that are constructed and intended to be used exclusively for pleasure, and does not apply to automobiles constructed and intended to be used for freight carrying or agricultural or industrial purposes, and does not apply to automobiles constructed and intended to be used both for pleasure and for freight carrying or agricultural or industrial purposes.

The jeep in which petitioner was riding when injured is described by him in his testimony as "just a Willys jeep, 4-wheel drive, cloth top", with two seats. By another witness it is referred to as a 1946 Willys Universal jeep.

■ Two witnesses testified as to the design and construction of jeeps and the purpose for which they are sold and intended to be used. Their testimony is undisputed. No issue of fact is raised. The testimony discloses many important differences between the jeep and the ordinary pleasure type automobile. The testimony and the photographs of the jeep in the record show that it is a rugged, uncouth vehicle without beauty of line or body, with no suggestion of comfort, and obviously intended for hard service rather than for pleasure. The jeep is not built like the ordinary passenger car. It is rougher and its seats are harder. The ordinary pleasure car has a two-wheel drive and the jeep has a four-wheel drive. This gives the jeep more power and it is better on roads that are not hard surfaced and better in the mud than the ordinary vehicle. The jeep is equipped with non-directional tires on which the gripping ribs run straight across the face of the tire and enable the vehicle to pull backward or forward. The seat on the jeep is thinner than the seat on the ordinary passenger car, and it has the minimum amount of springs. The jeep has six forward speeds and it has a low, low gear for heavy duty pulling. It has two standard drive shafts which operate front and rear differentials as standard equipment, and has also places for two other shafts front and rear. These are for the purpose of operating front end or rear end winches or mowers, "or anything that requires power take-off to operate." The ordinary passenger automobile does not have these. The tread of the jeep is narrower than the standard automobile tread. This gives more effective operation on muddy roads. The jeep is made to pull in the mud and to pull on grades

and inclines. It is useful in mountain areas and will go where a wagon cannot follow. It has a distinct advantage for operation on icy roads, on rough roads or across country. The standard jeep is adapted to various industrial attachments as electric welders, compressors, ditch diggers, sprayers, fire equipment and pumps. Jeeps are sold to farmers, rural electrical associations, oil companies and other industrial users.

Petitioner used the jeep in the performance of his work as a rural mail carrier. He had an extra seat that he put in the jeep on Saturday evenings and Sundays so that he and his family could use it for convenience, pleasure, to go to church and for social engagements. He testified that he owned another automobile at the time he was carrying the mail, first a Chevrolet and later an Oldsmobile, and that after his injury he sold the jeep to his substitute carrier, who used it in carrying the mail. There is testimony that jeeps can be used and often are used for various forms of pleasure, but this evidence does not change the fact, conclusively proved by the evidence which has been set out above, that jeeps are built and intended to be used and are used for other purposes than pleasure, as well as for pleasure, that the jeep is, as the Court of Civil Appeals expresses it, "an all-purpose car". We agree with that Court's holding that "as a matter of law the jeep involved here is not a private passenger automobile 'exclusively of the pleasure car type.'"

No case has been cited and we have found none that classifies the jeep except Union Pacific R. Co. v. United States (U.S. Court of Claims) 91 Fed. Supp. 762, 117 Ct. Cl. 534. The committees of the railroads had classified the jeep for rate purposes as a passenger vehicle rather than a freight vehicle, and the War Department had declined to pay on that basis. The suit was by the railroad company for the difference in the two rates on shipments over its lines. The court, after reviewing at length the history of the jeep and the use made of it during the war, held that the wartime jeep was primarily a passenger car and was correctly so classified for freight rate purposes. The opinion states that while the jeep was used for hauling and was "in many respects an all-purpose car", there was evidence that it was as used in the war from eighty to eighty-five per cent. for personnel and reconnaissance. The decision is not an authority that the jeep is a passenger automobile exclusively of the pleasure car type.

Spence v. Washington National Insurance Co., 320 Ill. App.

149, 50 N. E. 2d 128, construed the words of an accident insurance policy, "private passenger type automobile of the exclusive pleasure type", substantially the same as those of the double indemnity provision of the policy in the instant case, as not applying to an ordinary standard model half-ton Ford pick-up truck, although the plaintiff contended that the truck was as to the insured a passenger type automobile of the exclusively pleasure type because she had proved that the insured used the truck for transporting persons whom he picked up on the highway and at church, and for transporting his family and others to church and other places. The trial court's judgment for the plaintiff was reversed and judgment was rendered for the defendant.

Petitioner presents as closely in point a decision by the Supreme Court of Tennessee, Aetna Life Insurance Co. v. Bidwell, 192 Tenn. 627, 241 S. W. 2d 595. The policy named an amount to be paid if the insured were accidentally killed "while * * * riding in * * * a private passenger automobile of the pleasure car type", and the policy provided that the term "automobile" should not "include a motorcycle or any vehicle or mechanical devise for aerial navigation". The insured was killed while riding on a pleasure trip in a one-half ton pick-up truck. Judgment for the benficiary was affirmed. The decision was placed in part on the exclusion clause above quoted, and it is to be observed that the policy described the automobile as one "of the pleasure car type" and not as one *"exclusively"* of the pleasure car type", as here.

Decisions of the Iowa and the North Carolina courts hold that the same words of description as those construed in the Tennessee case discussed above, "private passenger automobile of the pleasure car type" do not include a Ford pick-up truck or a Ford one and one-half ton truck, although the truck may be used and is sometimes used for transporting passengers. Dirst v. Aetna Life Insurance Co., 232 Iowa 910, 5 N. W. 2d 185; Lloyd v. Columbus Mutual Insurance Co., 200 N. C. 722 158 S. E. 386. The decisions above discussed are not directly in point. Three of them at least tend to support the conclusion of the Court of Civil Appeals, which we approve, and the other two, for the reasons stated, are not authority for a different conclusion.

■ Respondent at first construed the double indemnity provision of the policy as applying to the jeep that petitioner was driving. It made six monthly payments to him of $200.00 each

for disability from October 12, 1948, to April 12, 1949. The payments were made by drafts, each bearing the statement that by the acceptance of the draft the claimant agreed that it was in full settlement of all indemnity to the date specified, the last being April 12, 1949. This construction of the double in- demnity provision by the insurer would be material if the provision were ambiguous, but it is not material because, as we have held, there is no ambiguity. Richardson v. Hart, 143 Texas 392, 395-396, 185 S. W. 2d 563; Highland Farms Corp. v. Fidelity Trust Co., 125 Texas 474, 481, 82 S. W. 2d 627; Parrott v. Brotherhood of Railroad Trainmen, 85 S. W. 2d 306, 310, application for writ of error refused.

We sustain the second point in petitioner's application which complains of the failure of the Court of Civil Appeals to render judgment, or to affirm the trial court's judgment, in his favor for the single indemnity payments that were delinquent when the suit was filed and when the judgment was rendered in the trial court. The Court of Civil Appeals, in holding that nothing was due and unpaid on the agreement to pay $100.00 per month, applied to the payment of the monthly installments from May 12, 1949, to October 12, 1949, inclusive, one-half of each of the six payments of $200.00 per month that had been made by the drafts above described. Those payments to the extent of one-half of each of them were made under a mistake of law on the part of respondent as to its liability under the policy. There is no suggestion in the record that there was a mistake of fact as to the kind of automobile in which petitioner was riding when injured or any other mistake of fact. The question whether the double indemnity provision of the policy applied to the jeep, the answer to which determined respondent's liability or nonliability for double indemnity, was one of law. The settled general principle applicable here is that "as between individuals, money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." 40 Am. Jur. p. 856, Sec. 205. See also Gilliam v. Alford, 69 Texas 267, 271, 6 S. W. 757; City of Houston v. Feeser, 76 Texas 365, 13 S. W. 266; Pitts v. Elsler, 87 Texas 347, 28 S. W. 518; Scott v. Slaughter, 80 S. W. 643, application for writ of error refused.

The opinions in some of the suit by lessees against lessors for recovery of bonus money paid for leases under the Relinquishment Act are cited by respondent as authority that the

double indemnity payments were made by it under a mistake of fact. The question presented in those cases may be distinguished in several respects from the question here considered. And examination of the opinions reveals that the right of the lessee to recover of the lessor was sustained primarily on breach of warranty, indemnity or failure of consideration. See Navarro Oil Co. v. Cross, 139 Texas 272, 276, 162 S. W. 2d 677; Sanolind Oil & Gas Co. v. Allison, 121 S. W. 2d 480, 482, affirmed in 133 Texas 540, 129 S. W. 2d 267; Empire Gas & Fuel Co. v. State, 21 S. W. 2d 376, 379, affirmed in 121 Texas 138, 47 S. W. 2d 265; Shell Pet. Corp. v. Tippett, 103 S. W. 2d 448, 452, application for writ of error refused.

■ Judgment should be rendered for petitioner against respondent for the amount of the monthly installments of $100.00 each from May 12, 1949, to March 12, 1950, inclusive, that is, for all installments due and unpaid at the time of the trial in district court, together with judgment for twelve per cent. penalty and reasonable attorney's fees under Article 4736 of the Revised Civil Statutes of 1925. Final disposition of the case would be made here but for what in our opinion was error on the part of the district court in overruling objections made by respondent to hypothetical questions propounded to witnesses who testified as to what in their opinions would be reasonable attorney's fees.

The hypothetical questions stated as assumed facts: the nature of petitioner's injury, the substance of the policy, including the double indemnity provision, the company's payment of double indemnity for six months and its failure thereafter to make further payments, that the policy runs for a maximum of five years, and that if the plaintiff is entitled to double indemnity the maximum recovery would be $200.00 per month from April 12, 1949, to October 12, 1953, or $100.00 per month for that period if he is entitled only to single indemnity. The question as propounded to one of the witnesses asked the witness to assume that the plaintiff was required to employ an attorney to prosecute his claim under the policy for accrued benefits "and to establish a disability of total and permanent for a period of five years from the date of disability, which is the maximum recovered under the policy"; and the question stated further that if the plaintiff is totally disabled he is entitled to at least one hundred dollars per month for five years. One of the witnesses testified that in his opinion $2500.00 or $3000.00 would be a reasonable fee. Each of the other two answered $2500.00. The objections made to the questions were:

that elements and facts were stated in them that were not in evidence; that the standard laid down in the questions varied from the terms and provisions of the policy; that the questions assumed that two different amounts were in controversy; that the questions assumed the existence of conditions beyond the scope of the policy; and that they assumed the right to recover monthly payments over a period of years in the future and in the past. The jury answered that $2500.00 would be a reasonable attorney's fee.

The inclusion in the questions of the statements that the policy ran for a period of five years, that the plaintiff was required to employ an attorney to establish total and permanent disability for a period of five years, and that the plaintiff, if totally disabled, is entitled to monthly payments for five years, would reasonably cause the witnesses to base their estimates of reasonable fees on a maximum recovery or a recovery for the maximum period of five years. The testimony of the witnesses on cross examination shows that they, or at least two of them, did thus base their estimates on a maximum recovery. One of them testified that $2500.00 or $3000.00 would be a reasonable fee "if the amount involved reaches what you have stated to me in your hypothetical question", and further that his answer was "predicated on the maximum." Another of the witnesses testified that one of the elements considered in arriving at a reasonable attorney's fee is what amount of money is involved, and further that in testifying to $2500.00 as a reasonable fee, he took into account "as stated in the question, that the amount involved, I figured, roughly between $6000.00 and $12,000.00, depending on whether recovery was had for single indemnity or double indemnity." And he testified that his "$2500.00 figure" was based on the "theory of anticipatory breach".

■ The court should not have submitted, as it did over respondent's objection, an issue as to permanent inability to work, there being in the policy no agreement to pay indemnity for permanent disability. The agreement in the policy is to pay monthly installments as long as inability to work continues, but not to exceed five years. The jury having found in effect that petitioner's inability to work had continued until the time of the trial, there were six past due and unpaid monthly installments when the suit was filed and eleven at the time of the trial. Both the trial petition and the trial amendment prayed for recovery of judgment for the amount due under the policy as alleged. There were no allegations of anticipatory breach.

Petitioner in his brief states that the suit "was for install-ments already due under the policy; future installments were not sought." Respondent has not repudiated the policy, but stands on it, contesting the right of petitioner to recover double indemnity and on the trial contesting petitioner's allegations of inability to work. In the suit as brought and under the cir-cumstances stated, petitioner would not be entitled to recover installments not yet due. Sanders v. Aetna Life Insurance Co., 146 Texas 169, 173, 205 S. W. 2d 43, 173 A.L.R. 968; Universal Life & Accident Insurance Co. v. Sanders, 129 Texas 344, 102 S. W. 2d 405; New York Life Insurance Co. v. English, 96 Texas 268, 72 S. W. 58.

■ Since there could be no recovery of installments not yet due, they should not be taken into consideration in measuring attorney's fees. New York Life Insurance Co. v. English, 96 Texas 268, 274, 72 S. W. 58; State Life Insurance Co. v. Atkins, 9 S. W. 2d 290, 292. The trial courts should have sustained re-spondent's objections to the hypothetical questions to the ex-tent of requiring the elimination of references to permanent disability, the maximum period of five years and the recovery of installments to October 12, 1953.

■ The judgment to be rendered here for recovery of install-ments due at the time of the trial is without prejudice to the rights of either of the parties hereto concerning future install-ments. Great Southern Life Insurance Co. v. Johnson (Com. App.) 25 S. W. 2d 1093.

■ The judgments of the district court and the Court of Civil Appeals are reversed and judgment is here rendered for peti-tioner, Paul Pennell, against respondent, United Insurance Company, Inc., for $1100.00, together with $132.00 as twelve per cent. penalty, with interest on the total sum of $1232.00 from April 7, 1950 at six per cent. per annum. The issue as to attorney's fees being severable, the cause is remanded to the district court for the trial of that issue. Rule 503. Trevino v. American National Insurance Co., 140 Texas 500, 506, 168 S. W. 2d 656. Costs in the Court of Civil Appeals are taxed against petitioner and costs in this Court against respondent.

Opinion delivered October 24, 1951.

Mr. Justice Sharp, joined by Justices Griffin and Smith and Chief Justice Hickman, dissenting.

I disagree with the majority opinion in holding that the

jeep used by petitioner, under the record in this case, is not a private passenger automobile "exclusively of the pleasure car type," and that the petitioner is not entitled to recover under the double indemnity provision of the policy of insurance.

Petitioner filed this suit against respondent to recover monthly disability benefits, plus double indemnity benefits, attorney's fees, costs, etc., under an accident and health policy issued by respondent. It is undisputed that the policy provided for payment at the rate of $100.00 per month, not to exceed five years, for accidental injury resulting in total loss of time, and double that amount" * * * if 'such injury' is sustained by the Insured (1) while driving or riding within any private passenger automobile exclusively of the pleasure car type as an owner or passenger, * * * if the injury causing the loss is due directly to the damaging of such automobile or passenger car." The jury returned answers to the special issues submitted in favor of petitioner. Upon this verdict the trial court entered judgment for petitioner for $200.00 per month from the date of the accident to the date of trial, after allowing credit of $1200.00 previously paid by respondent to petitioner, but plus $2500.00 attorney's fees and penalty on past due installments. The Court of Civil Appeals, by a divided court, reversed the judgment of the trial court, and held "as a matter of law that the jeep involved here is not a private passenger automobile 'exclusive of the pleasure car type,' and therefore not within the coverage of the double indemnity provision of the policy," and rendered judgment for respondent on that question. 238 S. W. 2d 602.

The evidence shows that petitioner at the time of his injury was a rural mail carrier; that he used the jeep for all family purposes and as a means of transporting the mail; and that it was his private automobile. He testified in detail regarding the mechanism and construction of the jeep; and it was also shown that the jeep had no attachment or compartment for freight, and if any freight was to be carried, necessarily it had to be put in the rear seat designed for passengers.

Mr. Williams testified that after the injury to petitioner he purchased the automobile from him, and used it for carrying the mail over a 50-mile rough road; that he purchased it to replace a 1936 2-door Ford sedan, which he had been using for such purpose.

Mr. Brown, a Chief Deputy for the Highway Department of Grayson County, testified that since January 1, 1947, he has

been custodian of the records for registration in that county, and in 1947 and 1948 petitioner registered a "Willys Jeep 1946 model, classification as passenger car."

Mr. Tuffer, general manager of a motor company handling Hudsons, Packards, Willys Jeeps, and Reo trucks, testified as an expert witness for respondent. He stated that the only difference between a Willys jeep and the other pleasure cars is that a jeep has a 4-wheel drive, and the other cars only a 2-wheel drive, and that the jeep make-up or appearance is different and there is some difference in the construction of the springs. He further testified that he sells many jeeps to mail carriers for carrying mail, due to the fact that jeeps get around in the mud and over rough roads better than automobiles, and that he also sells some to farmers for the same reason. He further testified that a jeep is a passenger car, and that it hauls passengers, and that there are some passenger cars not of the pleasure type. He enumerated buses and trucks as not being pleasure cars. He stated that a truck is not a pleasure type passenger car, but it is a passenger car. He explained the difference between the Hudsons and the Packards, and that there was a difference in the construction of the springs, the horse power, and the construction of the seats, and that there is a slight difference in all types of automobiles; that there are many types of cars exclusive of the pleasure type; and that one difference between the jeep and other pleasure type cars is that the jeep has a 4-wheel drive, which gives it more power.

Mr. Shiflett tstified as an expert on automobiles for respondent as to the differences between the constructural features of a jeep automobile and other passenger automobiles, and in effect gave his opinion that the jeep was not exclusively a pleasure type car. He also testified that he owned a jeep for his personal use, primarily to hunt and fish, and that he got pleasure out of its use; that he had friends who owned jeeps for personal use, and some used them to hunt and fish.

The trial court submitted several special issues to the jury which were answered in favor of petitioner. Among the special issues submitted was Special Issue No. 7, as follows: "Do you find from a preponderance of the evidence that the motor vehicle which Paul Pennell was driving on the occasion in question was a private passenger automobile exclusively of the pleasure car type?" To which the jury answered, "It was."

The precise question for determination is whether this record

presents as a fact issue that the jeep in question was a private passenger automobile exclusively of the "pleasure car type."

The determination of the rights of the parties to this suit depends upon the construction of the policy of insurance involved here, in the light of the record before us. The policy does not define what is meant by "any private passenger automobile exclusively of the pleasure car type," nor does it define the term "pleasure car type" nor the term "private passenger automobile."

There are several classes of automobiles,—such as trucks, busses, and other vehicles. The jeep in question was owned and operated by petitioner at the time of his injury as a private passenger automobile, and it was designed exclusively for the transportation of passengers. It was a "pleasure car type" to the insured and his family. The jeep, like most other automobiles, has undergone changes. It was used in the army whereever the army went, both in combat and noncombat areas, by many classes of soldiers, as a passenger car. The car in question is a 1946 model, similar in design to the wartime jeep. In Union Pacific R. Co. v. United States, 91 Fed. Supp. 762, 765, 117 Ct. Cl. 534, the Court of Claims gave an extensive theory of the wartime jeep. That case turned on whether or not the jeep should be classified as a passenger vehicle. The court said: "We find that the wartime jeep was primarily a passenger car."

The policy of insurance does not define what is meant by "any private passenger automobile exclusively of the pleasure car type," and we have found no case construing same. Therefore we are compelled to look elsewhere to try to ascertain its meaning. Webster New International Dictionary gives various definitions of "Pleasure," as follows:

"1. State of gratification of the senses or mind; agreeable sensation or emotion; the excitement, relish, or happiness produced by expectation or enjoyment of something good, delightful, or satisfying; delight; enjoyment; joy.

"2. What the will dictates or perfers as gratifying or satisfying; hence, will; choice; wish; purpose—with a possessive.

"3. That which pleases or delights; a cause, source, or object of pleasure; a delight; joy; gratification.

"4. Pleasure-giving quality; pleasantness.

"5. Sensuous gratification for its own sake; amusement; sport; diversion; self-indulgence; frivolous or dissipating enjoyment; sensual gratification."

The word "pleasure," as shown by the definitions just quoted, has many meanings. It is quite obvious that in attempting to construe "any private passenger automobile exclusively of the pleasure car type," in the light of the various definitions of the word "pleasure," inevitable confusion results, and it is impossible thereby to classify any car. Certainly the language used is not clear. In other words, looking at this provision of the policy from a practical standpoint, the term becomes meaningless.

The construction of insurance policies, as well as ordinary contracts, is governed by certain general rules. The language used in the policy should be given a fair and reasonable construction, in order to sustain the insurance and not defeat it. Terms of ambiguous meaning appearing in the policy are to be construed in the insured's favor. Respondent wrote the policy, and if its terms are not clear they will be construed against the insurer. The insurance company could have defined the meaning of the provisions quoted above, and such meanings so defined would ordinarily be enforced by the courts. The policy should be construed and applied in the light of the facts of the case. Kemper v. Police & Firemen's Ins. Assn., (Tex. Com. App.) 44 S. W. 2d 978, 981, reversing (Civ. App.) 28 S. W. 2d 1111; Fidelity Union Fire Ins. Co. v. Barnes, (Civ. App.) 293 S. W. 279, 281, writ of error refused; Old Colony Ins. Co. v. Hardaway, (Civ. App.) 14 S. W. 2d 372, 374; Piper v. Dennis, (Civ. App.) 274 S. W. 307, 308; 24 Tex. Jur., p. 701, sec. 25.

This Court, in the case of McCaleb v. Continental Casualty Co., 132 Texas 65, 116 S. W. 2d 679, said: "In construing the language used in a policy, if it is ambiguous or contains inconsistent terms, in order to arrive at the true intention of the parties expressed therein, the well-known rule that insurance contracts should be construed strictly against the insurer, and in favor of the insured, will control." See 29 Tex. Jur., p. 705, sec. 29; Tex. Jur., Ten Year Supp., 1937-1947, Vol. 6, p. 153, sec. 29.

A very cogent and persuasive reason for sustaining the judgment of the trial court is furnished by the acts of respondent. With full knowledge of the facts, respondent admitted liability, and voluntarily elected to pay petitioner under the

double indemnity provision of the policy. It is undisputed that respondent paid to petitioner the sum of $1,340.00, evidenced by four checks payable to Paul Pennell, as follows: (1) one for $325.00, dated November 12, 1948; (2) one for $200.00, dated December 12, 1948; (3) one for $200.00, dated January 12, 1949; and (4) one for $615.00, dated April 12, 1949. In making said payments under the double indemnity provision of the policy, respondent placed its own construction upon the wording of the provision of the policy and by its own definition and classification of the vehicle involved here same was considered a "passenger automobile exclusively of the pleasure car type." During the trial respondent did not request that the term be defined for the jury, and failed to except because such definition was not included in the charge of the court.

In Cyclopedia of Insurance Law, by Couch, Vol. 1, p. 330, the rule relating to the construction to be given a contract of insurance which has been construed by the insurer is stated as follows: "Where the parties have, by certain acts of their own, placed a construction upon doubtful terms of a contract of insurance, this construction generally will be adopted by the courts as against them." This rule is supported by many decisions. See Travelers' Protective Association of America v. Ziegler, (Tex. Civ. App.) 250 S. W. 1115; 44 C. J. S., Insurance, p. 1152, sec. 292.

The recent case of Superior Oil Co. et al. v. Stanolind Oil & Gas Co. et. al., 150 Texas 317, 240 S. W. 2d 281, involved a mineral lease claimed to be ambiguous and construed by the parties. In the opinion this Court said:

"The parties have construed this lease, and since it is ambiguous, the courts will follow the construction given by the parties.

"This court said in Lone Star Gas Co. v. X-Ray Gas Co., 139 Texas 546, 164 S. W. 2d 504; loc. cit. (5-7) 508:

" 'The original parties to the contract, and also the trial court construed such contract as contended for by the defendant; while the Court of Civil Appeals, with considerable difficulty, construed it as contended for by plaintiffs. If there is any doubt as to the meaning of a contract like the one before us, the courts may consider the interpretation placed upon it by the parties themselves. In this instance the acts of the parties themselves indicate the construction they mutually placed upon the contract at the time, including the acts done in its performance, and same is entitled to great if not controlling

weight. Courts will generally follow the interpretation of the ties themselves indicate thec onstruction the mutually placed upon a contract by the parties themselves constitutes the highest evidence of their intention that whatever was done by them in the performance of the contract was done under its terms as they understood and intended same should be done.' "

The fallacy in the reasoning of the majority opinion, as I see it, is in assuming that passenger cars of other makes than Willys Jeeps are "exclusively of the pleasure car type." There is no car in common use on the highways which is "exclusively of the pleasure car type," if that language be strictly construed. We must assume that it was intended that the policy should cover some type of cars. Should we hold, as a matter of law, that it was intended to cover, for example, a Ford car, and not a Willys Jeep, I can find no solid basis for such a conclusion of law.

In view of the ambiguous language relating to the double indemnity provision of the policy, and the construction of such provision by the insurance company in favor of petitioner, an issue of fact was raised for determination by the jury. Since the issue of fact was raised by the evidence on that question, and was answered by the jury favorably to petitioner, the Court of Civil Appeals erred in holding that no such issue, as a matter of law, was raised.

The judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court should be affirmed.

Opinion delivered October 24, 1951.

Rehearing overruled December 5, 1951.