**STATE of Texas, Appellant,**

v.

**TEXAS STANDARD LIFE INSURANCE COMPANY, Appellee.**

No. 3647.

Court of Civil Appeals of Texas.

Eastland.

Oct. 13, 1961.

Bob E. Shannon, Asst. Atty. Gen., for appellant.

T. C. Wilkinson, Brownwood, for appellee.

WALTER, Justice.

Texas Standard Life Insurance Company was granted permission to sue the State of Texas. In a non-jury trial, the insurance company recovered judgment against the State for $1,500 paid the Board of Insurance Commissioners as fees under an alleged mutual mistake of fact and implied duress. The State has appealed, contending the Court erred (1) in entering judgment for the insurance company because, during the 1954–1958 period, the insurance company was authorized to write insurance under Article 3.53 of the Texas Insurance Code, V.A.T.S. (2) in finding that the insurance company had paid said fees as a result of a mistake of fact (3) in finding that the Board accepted said fees under the belief that the company was writing insurance under said Article 3.53 because there is no evidence to support such finding (4) in finding that the insurance company paid said assessments under implied duress and (5) in its finding of fact number 5 because same is contradictory and inconsistent. The State also contends the holding that the insurance company never intended to write insurance under said Article 3.53, but intended to confine its activity to Article 3.50, is contrary to the great weight and preponderance of the evidence.

The insurance company's charter authorized it to write life, health and accident insurance. Article 3.53 of the Texas Insurance Code governs individual credit health, life and accident insurance. Article 3.50 of said code governs group credit life insurance. For the privilege of writing credit insurance under Article 3.53, an annual fee of $300 is required. No such fee is required under Article 3.50.

The insurance company was incorporated under the laws of the State of Texas on June 21, 1954. On September 1, 1954, the president of the insurance company requested the Board to furnish him the maximum rate schedules and other information about writing insurance under Article 3.53. On September 21, 1954, the insurance company wrote the following letter to the Board:

"In accordance with the provisions of Section 7, Article 3.53 of the 1951 Texas Insurance Code we submit herewith for approval:

"(a) Form for written application for credit insurance.

"(b) Form of credit insurance policy to be issued by the Texas Standard Life Insurance Company.

"(c) Certificate for individual coverage in excess of group protection.

"We shall thank you to advise when these forms are approved."

The Board made the following reply:

"We acknowledge receipt of the policy and application forms submitted with your letter of September 21. Our records do not reveal payment of the $300.-00 fee assessed by Board Order dated March 19, 1954, a copy of which is herewith enclosed. Therefore, we are unable to approve the individual credit policy form at this time.

"Since Article 3.53 specifically exempts from its operation those policies which are issued by authority of Article 3.50, the group creditor policy can be written without payment of the $300.00 fee. The draft of the group contract is being referred to the Actuarial Division for its review."

Texas Standard submitted to the Board of Insurance Commissioners specimen policies of group life insurance to be written under Article 3.50. It also submitted specimen policies for credit life insurance and credit health and accident insurance to be written under Article 3.53. The forms for writing insurance under both articles were approved by the Board. During each of the years that the insurance company paid the annual $300 fee, it could have legally written insurance under both articles. After the insurance company had paid the 1958 assessment, it concluded that said assessments had been erroneously made and collected because it had not been writing credit life or credit health and accident insurance as defined in Article 3.53, but had been writing group credit life insurance under Article 3.50.

While testifying, the president of the insurance company was asked, "Well, since you did write for these materials, did you think that at some future date that you might want to write under 3.53?, he answered, "Didn't know. We might * * * We don't write individual policies now. We might sometimes because we're authorized to." and, when asked, "Then you contemplate that you, perhaps, sometimes in the future might write it?", he answered, "Might do it, yes." Our Supreme Court in the case of Stanolind Oil & Gas Company v. State, 136 Tex. 5, 145 S.W.2d 569, 570, held: "The authorities hold that where a litigant admits positive and definite facts, which if true would defeat his right to recover, and such statements or admissions are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, he is conclusively bound by such admissions, and cannot successfully complain if the court directs a verdict against him."

Our Supreme Court in Pennell v. United Insurance Co., 150 Tex. 541, 243 S.W.2d 572,

576, said, "The settled general principle applicable here is that 'as between individuals, money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability.'" In the case of Stegall v. McLennan County, Tex.Civ.App., 144 S.W.2d 1111, 1113, (Dis.J.C.), the court held, "We think the rule in Texas is: 'When money is paid under a mutual mistake of law, the mistake of law, in and of itself, is no ground for recovering it back. All persons are equally presumed to know the law, and in such case both parties are equally at fault, and equally innocent of wrong done. To admit ignorance of law to be legally recognized as a fact sufficient in itself to prevert the will of the parties doing the act, so that it should be said and held that the will did not concur with the act done, thereby relieving him from the responsibility for and the consequences of the act, would render the administration of the law impracticable; and hence the rule is founded upon a political necessity, as well as upon public policy." "The distinction between a mistake of fact and a mistake of law is that a mistake of fact exists where a person understands the facts to be other than they are, whereas a mistake of law exists where a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts." 58 C.J.S. Mistake, page 832.

We find said assessments were not made under a mutual mistake of fact and the insurance company is not entitled to recover said assessment. The evidence shows conclusively that the president of the insurance company had read the applicable portions of the insurance code and had been furnished all applicable information by the Board. The evidence further conclusively establishes that the insurance company was authorized and had the privilege of writing insurance under Article 3.53. If they were laboring under any misapprehension as to the legal consequences of these facts and circumstances that would be a mistake of law, not a mistake of fact.

The judgment is reversed and rendered that the insurance company take nothing.