Jesse M. BURNETT et al., Appellants,

v.

MASONIC GRAND CHAPTER OF the ORDER OF THE EASTERN STAR, Appellee.

No. 16440.

Court of Civil Appeals of Texas.

Fort Worth.

June 21, 1963.

Ernest May, Fort Worth, for appellant.

Pannell, Dean, Pannell & Kerry, and Henry E. Kerry, Fort Worth, for appellee.

RENFRO, Justice.

This suit was brought originally by Mrs. E. E. Burnett against Masonic Grand Chapter of the Order of the Eastern Star, in which she sought a declaratory judgment to determine whether she or defendant should pay a printing bill due Luther Cooksey. Judgment was rendered for defendant. We reversed and remanded because Cooksey was not made a party to the suit. Burnett v. Masonic Grand Chapter of Order of Eastern Star, Tex.Civ.App., 340 S.W.2d 81.

Mrs. Burnett died while the former appeal was pending, and her children, J. M. Burnett, Hortense Chatman and Jewell B. Sweatt, were later substituted as plaintiffs. The printing bill, amounting to $287.40 for one issue of the Eastern Star paper and $1,444 for the minutes of the 1957 meeting of the Grand Chapter, was paid by plaintiff J. M. Burnett to Cooksey, thus eliminating Cooksey as a necessary party. In their amended petition plaintiffs pray for judgment against the Grand Chapter for reimbursement of said $1,731.40.

For approximately 50 years Mrs. E. E. Burnett was the efficient and dedicated Grand Secretary of the Grand Chapter. She edited the Eastern Star paper and arranged for the printing of the minutes of the General Session of the Grand Chapter. Unfortunately for all concerned, sometime prior to the 1957 annual session, considerable friction and controversy had arisen between Mrs. Burnett and her children

(the plaintiffs in the present suit) on the one side and the other Grand Officers on the other. Prior to June, 1957, J. M. Burnett had filed a lawsuit against the Board of Directors and some of the Grand Officers of the Grand Lodge. The nature of that suit is not reflected in the record of the instant case. The record in this case, however, shows that intense feeling had been generated and the Grand Officers charged that Mrs. Burnett had used the Eastern Star as a means of promoting the Burnett side of the controversies.

At the June, 1957 annual session of the Grand Chapter, the Board of Directors, by an overwhelming majority, was authorized to edit the minutes of the proceedings of the Grand Chapter before their publication. By a similar near unanimous vote the Grand Chapter voted to suspend the operation of the Eastern Star paper until such time as the Board of Directors could put it into operation again to carry out its original purpose of serving the Eastern Star, exclusive of any personal matters between officers and others.

Mrs. Burnett ignored the action of the Grand Chapter and arranged with Cooksey for the printing of the minutes and for an issue of the paper.

Before beginning the work Cooksey was informed orally and in writing by the Grand Officers of the action of the Grand Chapter and that the Grand Chapter would not be responsible for any printing bills incurred by Mrs. Burnett.

Cooksey thereupon refused to do the printing without a written guaranty of payment from Mrs. Burnett. On June 5, Mrs. Burnett, her son, J. M. Burnett, and daughter, E. H. Chatman, plaintiffs in the instant suit, gave Cooksey the following instrument:

"Dear Mr. Cooksey:
   "Printing of April 1958 Issue of OES Paper
   "Minutes for the 1957 Annual Session of OES

"In consideration of the printing of the OES Paper for the month of April 1958, along with the minutes of the Annual Session of the Masonic Grand Chapter of the Order of Eastern Star of Texas and Jurisdiction, at the quoted price of $9.65 per page for the minutes and the usual and customary price for the Paper according to the number of pages, we, the undersigned, do hereby promise to reimburse you in the full amount of your bill on or before November 16, 1958, if the Grand Chapter has not paid you by this date.
"Thanking you for your consideration, we remain
"Very truly yours
"(Signed):
   "(Mrs.) E. E. Burnett
   "(Mrs.) E. H. Chatman
      "Jesse M. Burnett."

Cooksey then printed the minutes and the April, 1958 issue of the paper.

As heretofore stated, J. M. Burnett subsequently paid the bill in full.

The plaintiffs and Mrs. Burnett were fully aware of the action of the Grand Chapter and of the Grand Officers' instructions to Cooksey.

■ The plaintiffs contend the court erred in holding that the Grand Chapter was not liable for the expense of printing the newspaper and the 1957 minutes.

Plaintiffs contend the vote to suspend the publication of the paper was unconstitutional, that the annual convention of 1913 established the paper, commanded its publication, and levied an annual tax of 15 cents on each member for its support. The Constitution in effect in 1957 provided: "It shall be the duty of the Grand Secretary to Edit the Eastern Star Paper." It is argued that had Mrs. Burnett not had the paper published she would have been derelict in her duty.

Plaintiffs say that the Constitution necessarily implied the Chapter's contractual

obligation to publish the annual minutes by reason of the provision, "It shall be the duty of (each) Chapter to preserve in its archives a copy of the proceedings of the Grand Chapter as published from year to year", and that it was the prerogative of the Grand Secretary to publish the minutes because of the Constitutional provision, "It shall be the duty of the Grand Secretary to solicit bids for printing * * * and award contracts to the lowest and best bidder."

In brief, plaintiffs' position is: "No article of the defendant's Constitution empowered its Board of Directors to interfere with the Grand Secretary in exercise of her constitutional prerogative to publish the newspaper and her 'true record of the proceedings of the Grand Chapter.' It was the defendant's constitutional duty to pay her 'necessary and proper expenses in the discharge of her duties incident to editing the Eastern Star Paper.' It was the Grand Secretary's prerogative to 'award contracts' for printing. So long as she kept her 'necessary and proper expenses' within 'the paper fund,' and so long as her printing contracts were with 'the lowest and best bidder,' there was no discretion in the defendant's Board of Directors to withhold her expenses or dishonor her contracts."

Other provisions of the Constitution provide that the Grand Chapter by its inherent authority of possession is supreme in all matters pertaining to its internal affairs, and has complete jurisdiction over all matters or controversies that may be brought before it with its rulings, edicts and judgments always controlling and being final.

According to the Constitution, the Board of Directors shall approve all expenditures from the Revenue Fund.

The Constitution makes it "the duty of the Grand Secretary to solicit bids for printing at least ninety (90) days before each annual session of the Grand Chapter, and *in conference with other members of the commission of Board of Directors* during the Grand Chapter Session, to open and compute all bids and awards contracts to the lowest and best bidder, making a detailed report of *their* work to the Grand Chapter." (Emphasis added.)

The Committee on printing consists of the Grand Matron, Grand Patron, Grand Treasurer, Grand Secretary, and one member of the Board of Directors.

The Grand Secretary, provides the Constitution, shall carry out to the fullest extent of her ability such orders as may be issued by the Grand Matron, Grand Patron or Grand Chapter.

The action of the Grand Chapter in suspending the publication of the paper "until such time as the Board of Directors can put it into operation again * * *" was not an abolishment of the paper, but a mere temporary suspension. We do not find that the Constitution or bylaws set out the specific dates of publication of said paper. In so far as the record shows, it is possible that the Board of Directors could "put it into operation again" in short time. In any event, the Grand Chapter ordered a temporary suspension. It was the duty of the Grand Secretary to carry out orders issued by the Grand Chapter.

It is conceded that the Board of Directors was authorized to edit the minutes of the 1957 Annual Session of the Grand Chapter before publication.

A "conference with other members of the commission of Board of Directors" was not held. The Grand Chapter's order for the Board of Directors to edit the minutes before publication was ignored by Mrs. Burnett.

The Constitution does not provide a definite date for the printing of the minutes and does not provide who shall edit the minutes.

The Grand Chapter, through its highest officers, told Cooksey not to print the minutes. A copy of the letter to Cooksey was sent to Mrs. Burnett.

In our opinion, the Grand Chapter never became obligated to Cooksey. Cooksey seemed to think the same way for he would not proceed with the printing until Mrs. Burnett agreed in writing to be personally responsible for the printing.

The Grand Officers and the Grand Chapter were within their Constitutional authority in the actions they took. There being no contract with and liability to Cooksey by the Grand Chapter, Mrs. Burnett could not make the Grand Chapter liable to her for the printing by obligating herself personally to Cooksey for the payment of such printing.

■ As an additional reason for affirming the judgment, we hold that J. M. Burnett, in paying the printing bill, was in the position of a volunteer. He was not an officer of the Grand Chapter. He did not sign the above quoted letter to Cooksey in behalf of the Grand Chapter. He signed it as an individual. So far as the record shows, he paid Cooksey with his own money. There is no showing that any of Mrs. Burnett's money was paid to Cooksey, even if she had been acting for the Grand Chapter.

■ It is a general rule that money paid with full knowledge of all the facts, and without fraud, deception, duress or coercion, cannot be recovered even though it was paid without consideration. 44 Tex.Jur.2d, p. 740, § 72. The above rule has been applied to various fact situations as in City of Houston v. Feizer, 76 Tex. 365, 13 S.W. 266; Pitts v. Elser, 87 Tex. 347, 28 S.W. 518; Pennell v. United Ins. Co., Inc., 150 Tex. 541, 243 S.W.2d 572; Ward v. Tadlock, Tex.Civ.App., 183 S.W.2d 739; Ladd v. Southern Cotton Press & Mfg. Co., 53 Tex. 172.

Cooksey was paid in full by J. M. Burnett. There are no pleadings or evidence that the other plaintiffs paid any part of the printing bill.

Plaintiff J. M. Burnett paid the printing bill with full knowledge of all the facts, and without fraud, deception, duress or coercion.

The judgment of the trial court is affirmed.

Affirmed.