The **NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, Appellant,**

v.

**Ralph Michael MARTIN, Administrator, Appellee.**

**No. 1028.**

Court of Civil Appeals of Texas, Tyler.

July 21, 1977.

Rehearing Denied Aug. 11, 1977.

Jesse M. DeWare, IV, Lawrence & Lawrence, Tyler, for appellant.

R. L. Whitehead, Jr., Whitehead & Beckworth, Longview, for appellee.

McKay, Justice.

This case involves the question of whether a "camper special" pickup truck comes within the meaning of "automobile" included in the vehicle accident provision of a life insurance policy. Appellee brought suit as administrator of the Estates of Leon Ralph Martin and Mary Jo Martin, deceased, against appellant seeking to recover additional benefits based upon certain provisions relating to vehicle accidents found in the life insurance policies of the two deceased. Trial was before the court who rendered judgment for appellee. The court upon request of appellant made the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

"1. The Defendant issued a policy of insurance to Mary J. Martin, policy number 9817187, effective February 22, 1968.

"2. The Defendant issued a policy of insurance to Leon R. Martin, policy number 9818614, effective March 1, 1968.

"3. Each policy provided benefits in the event of accidental death of the above named persons.

"4. Each policy provided for coverage in addition to the face amount for vehicle accidents.

"5. Such additional coverage was in the total amount of $6,000.00.

"6. Each of the policies were in full force and effect on December 25, 1975.

"7. Leon Martin and Mary J. Martin died on December 25, 1975, and December 28, 1975, respectively, as a result of injuries received in a vehicle accident which occurred on December 25, 1975.

"8. At the time of receiving such injuries Leon Martin and Martin [sic] J. Martin were not driving or riding in an automobile while it was racing, drag racing or in willful violation of any traffic law or ordinance.

"9. All prerequisites of the insurance contracts and of the law were complied with by Plaintiff to collect the proceeds of the policies.

"10. Defendant, though demand was made, refused to make payment of the vehicle accident benefits under such insurance policies.

"11. The vehicle in question was not used by the Martins for any purpose other than pleasure.

"12. As applied to the vehicle in which Leon Martin and Mary J. Martin were riding at the time they received the injuries causing their death, the language of the insurance policies which provided that 'automobile shall mean a four-wheel passenger motor vehicle exclusively of the pleasure car type, not operated by the insured for hire' is ambiguous.

"12. [sic] A reasonable attorney's fee for the legal representation of Plaintiff at the trial court stage of the proceedings is $2,000.00.

"13. A reasonable attorney's fee for the legal representation of Plaintiff in the event of an appeal to the Court of Civil Appeals is the additional sum of $400.00.

"14. A reasonable attorney's fee for the legal representation of Plaintiff in the event of an appeal to the Supreme Court of Texas is the additional sum of $600.00."

## CONCLUSIONS OF LAW

"1. The language of the policies in question being ambiguous it is to be construed most favorably toward the Plaintiff.

"2. Plaintiff therefore is entitled to recover the amount of the amount of the vehicle benefit, statutory penalty, and reasonable attorney's fee."

Upon further request of appellant the court made the following Additional Findings of Fact:

"1. Leon Martin and Mary J. Martin were riding in a 1968 camper special Ford pickup truck on December 25, 1975, when they received the injuries which resulted in their deaths.

"2. Attachment 'A' and Attachment 'B' to the Answers To Interrogatories filed herein are true copies of The National Life and Accident Insurance Co. policies Nos.

9817187 and 9818614 providing life insurance coverage on the lives of Mary J. Martin and Leon R. Martin."

Appellant brings one point of error on this appeal: "The Trial Court erred in determining that a pickup truck was an automobile vehicle as defined in each life insurance policy and thereby erred in allowing recovery for the additional death benefit for a vehicle accident." Appellant contends that as a matter of law the pickup truck in question did not come within the meaning of the vehicle accident provisions of the policy.

The record shows that Leon Ralph Martin and Mary Jo Martin died as a result of injuries received the them in a highway collision while riding in a 1968 F–250 three-quarter ton "camper special" Ford pickup truck. The life insurance policies on each of the deceased provided for "Additional Accidental Means Death Benefits" of $3,000 by "Non-Vehicle Accident" and $6,000 by "Vehicle Accident." Both policies further provided in part as follows:

"Vehicle Accident. The Vehicle Accident Benefit shall be payable in lieu of the Non-Vehicle Accident Benefit . . . (3) if such injuries result from his (a) driving or riding in an automobile (*as defined below*) operated on a public street or highway other than in racing, drag racing, or in willful violation of any traffic law or ordinance . . . *The term 'automobile' shall mean a four-wheeled passenger motor vehicle exclusively of the pleasure car type not operated by the insured for hire.*" [Emphasis added.]

Appellee made demand in writing for these "Vehicle Accident" benefits which appellant refused to pay.

Two witnesses testified at trial as to the nature of the pickup truck in question. Harold Martin, the brother of the deceased Leon Ralph Martin, who had sold the truck to the latter, testified that the truck was a "camper special" designed to have "a camper sitting on the back of it" and that the only difference in equipment on this vehicle and "a regular pickup truck" was "the beefing up of the frame and what have you to make it more stable." According to Harold, the deceased Leon Ralph Martin "only bought it because he was going to retire and put his camper trailer we have along with the camper on the truck. That was the only purpose he bought it for" and "that's what he used it for." He testified that pickup trucks were used for pleasure equally as much as automobiles and that the seats were the same as in an automobile. In regard to this particular truck Harold indicated that it had two-wheel drive, truck tires which had standard automobile treads, a standard automobile drive shaft and differential, an automatic transmission, and was not equipped for heavy-duty pulling. However, he testified that the truck had an eight-by-seven foot bed, could haul 1500 pounds and "other than the camper special" was not any different from any other pickup truck.

The appellee-administrator, son of the two deceased, testified that the truck in question was not used other than for pleasure. According to him the couple also had a 1968 Chevrolet Impala, but that they used the truck for pleasurable trips as much as the car. He cited examples of persons who use passenger automobiles for other than pleasure, including an E. K. Buster Dixon who "owns a tubing puller, and signs for oil rigs" and uses his Cadillac El Dorado for "hauling materials to and from the job"; his insurance agent who has "got all his material, books, catalogues, insurance policies in the trunk" of his automobile; and an uncle who was a retired auditor for the Federal government who carried "machines, adding machines, typewriters" in his personal car. He said he knew of no type of motor vehicle that is designed solely for pleasure, and that "the biggest majority" of pickup trucks are not bought and used solely for pleasure.

The question we are presented with is whether the vehicle in question is "exclusively of the pleasure car type" under the terms of the policy. In *Pennell v. United Insurance Company*, 150 Tex. 541, 243 S.W.2d 572, 573–575 (1951), the Supreme

Court reviewed language almost exactly the same as that in the present case. In that case the accident and health policy provided for double indemnity when injury was sustained by the insured "while driving or riding within any private passenger automobile *exclusively* of the pleasure car type." [Emphasis added.] The insured was injured while riding in a 1946 Willys Universal jeep. Speaking for the Court, Justice Smedley answered a contention that because of the use of the word "exclusively" the term in question was ambiguous:

"The words are simple. We do not find, as petitioner contends, that the word 'exclusively' causes the description to be ambiguous or that ambiguity arises from the 'placement' of that word. 'Exclusively' gives emphasis to the description as an automobile of the pleasure car type. We believe the words clearly mean that the double indemnity provision applies only to automobiles that are constructed and intended to be used exclusively for pleasure, and does not apply to automobiles constructed and intended to be used for freight carrying or agricultural or industrial purposes, and does not apply to automobiles constructed and intended to be used both for pleasure and for freight carrying or agricultural or industrial purposes."

Also rejected was the contention that the *use* of the vehicle involved was to be considered in determining whether it came under the policy provisions.

"There is testimony that jeeps can be used and often are used for various forms of pleasure, but this evidence does not change the fact, conclusively proved by the evidence which has been set out above, that jeeps are built and intended to be used and are used for other purposes than pleasure, as well as for pleasure, that the jeep is, as the Court of Civil Appeals expresses it, 'an all-purpose car.' We agree with that Court's holding that 'as a matter of law the jeep involved here is not a private passenger automobile "exclusively of the pleasure car type." ' "

In *Tuttle v. Gamble Alden Life Insurance Company*, 385 F.Supp. 1352, 1356–1357 (N.D.Tex.1974, aff'd 5 Cir., 531 F.2d 573), the policy defined "private automobile of the private passenger design designed primarily for transporting persons." The court there held that a Dodge pickup with an "A" frame and winch located in its bed which was used for obtaining family groceries and "going places" was not included in the above definition. The court in concluding that the word "primarily" meant the same as the word "exclusively," stated: "The most that could be said was that it was a vehicle designed for a dual purpose which does not satisfy the requirement of the policy."

Other cases have held pickup trucks to come within the meaning of "private passenger automobile," and "private automobile of the pleasure car design." *Hartford Accident and Indemnity Corp. v. Lowery*, 490 S.W.2d 935, 939–940 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.); *State Farm Mutual Automobile Insurance Co. v. Durrett*, 472 S.W.2d 214, 216–219 (Tex.Civ.App.—Fort Worth 1971, no writ); *Prudential Insurance Company of America v. Lucas*, 456 S.W.2d 429, 430–433 (Tex.Civ.App.—Austin 1970, writ ref'd n. r. e.); *Mutual Benefit Health and Accident Association v. Hudman*, 385 S.W.2d 509, 513–514 (Tex.Civ.App.—Austin 1964, rev'd on other grounds, Tex., 398 S.W.2d 110). However, in none of the above cited cases was the word "exclusively" included in the definition. In fact, in the *Hudman* case the court indicated that had the policy contained the word "exclusively," thereby restricting the type of private passenger automobile covered, the result would have been different. 385 S.W.2d at 514.

■ We agree with appellant's contention that the *Pennell* case governs the present situation and that the language of the policy in question excludes the vehicle involved as a matter of law. The vehicle accident provision of the policy prescribes that an automobile falling under it must be "exclusively of the pleasure car type." The truck in question had both a seat for passengers and a bed and suspension designed

for occupational or commercial hauling. Although the truck was equipped to haul a camper, the evidence did not indicate whether a camper was mounted on the truck at the time of the accident, or if one was so mounted whether it could be easily removed so as to accommodate hauling. The fact that the truck had special suspension to handle the mounting of a camper does not make it exclusively of the pleasure car type just as the installation of a trailer hitch on a passenger car would not make it exclusively of the "freight carrying type." There is no evidence that the truck in question was "constructed and intended to be used exclusively for pleasure," as required by *Pennell*, but the evidence reveals only that this particular vehicle was being used solely for pleasure. It was clearly a "dual purpose" vehicle not covered under the terms of this policy.

■ We hold that the trial court erred in holding that the language in question was ambiguous. We agree with appellant's contention that the vehicle in question was not, as a matter of law, an automobile as defined in the policy. Appellant's point of error is sustained.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.