**GEORGE LINSKIE COMPANY, Inc.,**
Appellant,

v.

**MILLER–PICKING CORPORATION,**
Appellee.

No. 4901.

Court of Civil Appeals of Texas,
Waco.

June 25, 1970.

Rehearing Denied July 16, 1970.

Grady, Johnson, Smith & Blakeley, Robert C. Johnson, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, Julian Mike Joplin, Dallas, for appellee.

## OPINION

WILSON, Justice.

Summary judgment that plaintiff-appellant take nothing was rendered as to most of the items in its action on a sworn account. The principal question is whether, as a matter of law, defendant's check was tendered to plaintiff conditioned on settlement of a disputed claim so as to constitute an accord and satisfaction, rather than as part payment as plaintiff contends. This question turns on whether defendant's let-ter transmitting the check, quoted in the appendix, requires such construction.

Plaintiff alleged it contracted to install air conditioning equipment manufactured and sold to it by defendant; that the equipment delivered by defendant was defective, and the defects caused damage; that plaintiff performed labor and furnished material to correct the defects and damage at defendant's special instance and request, and for which defendant agreed to pay, in the total sum of $17,218.20 as shown by itemized invoices attached to the petition. It was alleged defendant had paid $6,412.80 on the account (including $5812.80 represented by the check in question), and judgment was sought for the balance. Defendant pleaded the payment by the $5812.80 check was tendered and accepted in full settlement of the claim, disputed in good faith, and constituted an accord and satisfaction of claims included in all but one of the invoices, which is not involved in the summary judgment. The trial court sustained defendant's motion which asserted that the payment was tendered and accepted so as to constitute an accord and satisfaction.

The letter of transmittal quoted in the appendix enclosed the check for $5812.80, on which there was no notation. Plaintiff cashed the check and applied it as part payment.

There is little difficulty in ascertaining the rules which must govern decision. They are most recently summarized by the Supreme Court in Industrial Life Insurance Company v. Finley 382 S.W.2d 100 (Tex. Sup.1964); H. L. "Brownie" Choate, Inc. v. Southland Drilling Co., 447 S.W.2d 676 (Tex.Sup.1969); and Jenkins v. Henry C. Beck Company, 449 S.W.2d 454 (Tex.Sup. 1970). The difficulty lies in application of the settled rules to the letter of transmittal.

It is obvious that there existed, without question, a "bona fide dispute" as to defendant's liability. It is also undisputed that

the statement in the letter transmitting the check expresses "the basis of its tender". It is unequivocally stated that it was to cover expenses for which liability was admitted, and others for which it was denied, "as an indication of our policy to stand behind our product." Each item in each invoice was analyzed in the letter. On some the conclusion was clearly, explicitly and unequivocally stated that they are "not our responsibility", are "not our expense", "are not covered", and "we will not be able to honor". Other items, it was stated, "we will honor", "are covered by the enclosed check", and "are included" in the check. The total of the items in the invoices which defendant's letter stated were covered by or included in the check was the amount of the check, $5,812.80.

The check was tendered as "this total payment of $5,812.80 for charges against this project through April 25, 1967", which defendant stated it felt was "quite equitable".

The letter must be held to be so clear and unequivocal that it is not reasonably susceptible of the interpretation that the check was tendered in part payment, as plaintiff now urges.

■ In our opinion, under the tests summarized in Jenkins v. Henry C. Beck Company, above, and the other cited cases, the letter conclusively establishes that the check was tendered in full satisfaction of the entire claim; that there was an unmistakable communication of the condition of acceptance which the creditor was "bound to understand"; and an assent by the creditor in cashing the check, which constitutes an accord and satisfaction.

■ Defendant emphasizes against the judgment that such words as "in full settlement" or "payment in full" do not appear on the check or in the letter. These words are not essential where the effect of the tender is clear, as it is here. Knutson v. Ripson, 163 Tex. 312, 354 S.W.2d 575, 576 (1962); City of Mesquite v. Rawlins, 399 S.

W.2d 162, 168 (Tex.Civ.App., Tyler 1966), writ ref. n. r. e.; Early-Foster Co. v. W. F. Klump & Co., 229 S.W. 1015, 1019 (Tex. Civ.App., Austin 1921); 1 Tex.Jur.2d 234, Sec. 35; 1 C.J.S. Accord and Satisfaction § 33, p. 524.

After rendering summary judgment on that portion of the claim arising before August 25, 1967, the court proceeded to trial by jury of the balance, represented by an additional invoice, and rendered judgment for plaintiff on the jury verdict for $3,028.81. No complaint is made by plaintiff of this portion of the judgment. Defendant presents a cross-point complaining of admission of evidence, which does not reflect reversible error. It is overruled.

Plaintiff sought recovery of attorney's fees, and says its claim was for labor performed and material furnished as itemized in its sworn account, so as to entitle it to recovery under Art. 2226, Vernon's Ann. Civ.Stat. Defendant's objections to plaintiff's offer of proof of reasonable attorney's fees were sustained. The objections were: (1) that plaintiff had previously rested, and since the evidence on attorney's fees was not in rebuttal it came too late; and (2) that plaintiff's action was founded on a written purchase contract, and the warranty contained in it. Defendant argues that the suit is one, therefore, "resting upon special contract", such that no attorney's fees are recoverable.

Defendant says its position is that the evidence as to attorney's fees was properly excluded "for the reason that plaintiff's claim does not come within the purview of Art. 2226".

It is true, as defendant points out, that plaintiff's pleading states it is a suit "founded upon a contract"; but this was in connection with application for service on a foreign corporation as provided by Art. 2031b, V.A.C.S., and the pleading alleges both an express and an implied contract. The petition alleged the labor and material itemized was performed and furnished "at defendant's special instance and request"

as well as pursuant to an oral and written agreement.

The evidence was that defendant "agreed to pay us for doing the work", and "we would be reimbursed for the charges". The word, "warranty" was mentioned in the evidence, but plaintiff testified, "that is our warranty" which is referred to, and "dosen't have anything to do with Miller-Picking's warranty". The cause of action is not breach of warranty. It rests on a request by defendant to plaintiff to perform labor and furnish material. Defendant's letter, which was introduced on its defense of accord and satisfaction, refers to its "standard product warranty", and states it had honored "invoices not covered by the warranty"; but the record does not so limit plaintiff's cause of action.

In deciding whether plaintiff's claim for attorney's fees is maintainable we are required to apply the decision in Tenneco Oil Company v. Padre Drilling Company, Inc. (Tex.Sup.1970), 453 S.W.2d 814 and other Supreme Court opinions interpreting Art. 2226, Vernon's Ann.Tex.Civ.Stat.

Plaintiff's action is not founded upon a sworn account within the meaning of the statute as construed in Meaders v. Biskamp, 159 Tex. 79, 316 S.W.2d 75, 78 (1958); Van Zandt v. Fort Worth Press, 359 S.W. 2d 893, 895 (Tex.Sup.1962); Guay v. Schneider, Bernet & Hickman, Inc., 161 Tex. 560, 344 S.W.2d 429, denying writ in the same case, Tex.Civ.App., 341 S.W.2d 461; Tenneco Oil Co. v. Padre Drilling Company, Inc., above. The account is not one "in which there is a sale upon one side and a purchase upon the other, whereby title to personal property passes from one to the other".

Plaintiff's executive vice-president testified as to the agreement with defendant's agent: "The discussion was, did he want to come in and do this work with his people, or did he want to make arrangements locally for the work to be done. He had no one locally to do the work, and therefore it was more expedient for him to have us to

do it and pay us to do it, and that was the discussion, and that is what he agreed to". The president of plaintiff testified defendant "asked us to continue to install replacement parts in their behalf; they had no representation", and "to continue to replace these parts, and for us to continue to send the billing" to defendant. The evidence does not authorize determination of existence of a sale whereby title passed from plaintiff to defendant.

■ Plaintiff corporation is not authorized to recover attorney's fees under Art. 2226 for "personal services rendered" or for "labor done", as its counsel concedes in argument is directly held by *Tenneco,* above.

■ The evidence is clear, however, that part of plaintiff's claim is for "material furnished" to defendant, for its use and benefit, and at its special instance and request as "material supplied on this job for this corrective work". As to this portion of plaintiff's claim attorney's fees are recoverable under Art. 2226. Plaintiff is entitled to trial of its claim for attorney's fees.

■ The issue of attorney's fees is severable from the other issues under Rule 434, Texas Rules of Civil Procedure. Pennell v. United Ins. Co. (1959) 150 Tex. 541, 243 S.W.2d 572, 577; Great American Reserve Ins. Co. v. Britton (Tex.Sup.1966) 406 S.W.2d 901, 907; Schecter v. Folsom (Tex.Civ.App., Dallas, 1967) 417 S.W.2d 180, 184; Rhoades v. Miller (Tex.Civ. App., Tyler, 1967) 414 S.W.2d 942, 945; Combined American Ins. Co. v. Jordan (Tex.Civ.App., Amarillo, 1966) 403 S.W.2d 811, 816; Richardson v. Raby (Tex.Civ. App., Tyler, 1964) 376 S.W.2d 422, 428; Texas Employment Commission v. Brasuell (Tex.Civ.App., Eastland, 1951) 235 S.W.2d 950, 952, writ. dism. This portion of the cause is severed and remanded for trial.

The remainder of the judgment is affirmed. Costs on appeal are taxed ⅕ to appellee and ⅘ to appellant.

APPENDIX

"July 25, 1967

Mr. George Linskie
George Linskie Company, Inc.
2608 Inwood Road
Dallas, Texas 75235

Dear Mr. Linskie:

Here is our analysis of your invoices dealing with the Taylor Publishing Company project. Enclosed with this letter is a check to cover those expenses covered by our standard product warranty. We are also honoring a number of invoices not covered by the warranty as an indication of our policy to stand behind our product.

*Material and Contract Work*

Invoice #2325: These were charges for repairing insulation, caulking, etc. totaling $600. We paid this invoice on November 8, 1966.

Invoice #2347: The charges in this case were for installing a new fan scroll collar and guard on unit #4. We believe this was for the condenser fan and not the evaporator fan as stated. Air diffuser plates were also installed in the air handling section. Although *this charge includes labor for which we are not directly responsible, we will honor the total invoice* for $202.10.

Invoice #2353: These charges for changing the damper linkage and duct connection clips we will also honor for $231.00.

Invoice #2354: These charges for re-wiring Miller-Picking units and changing the compressor sequence are a mystery to us. Our compressor sequence can be easily changed without touching the wiring inside of the unit. Just change the temperature control wiring hookup to the unit terminal strip. *We do not feel this work in any way can be considered our responsibility.*

Invoice #2355: These charges for new drives and changing the drives on units #9 and #10 were incurred for correction of standard field problems *not our responsibility*. By the way, we did send you new

sheaves and pulleys for the other units. The *drive changes were not the result of a factory error.*

Invoice #2356: We will honor the charges for the transformer and fuses totaling $99.61. This is really a *sales concession* since we still contend the transformers in the Miller-Picking units are of sufficient capacity. The temperature control contractor should have provided transformers for his controls. The billing from Fisk Electric Company of Dallas is for installing these parts and in our judgment this is *not a Miller-Picking expense.*

Invoice #2357: The charges for Sporlan parts, couplings, and gaskets totaling $243.-75 are covered by the enclosed check. *Charges for refrigerant and oil are not covered.* No manufacturer that we are aware of will cover charges for this material.

Invoice #2369: These are charges for both the labor and material for repairing the condenser fan section in unit #3. We will pay this entire billing of $143.28.

Invoice #2386: There are a number of charges included under this invoice dealing mainly with compressor repair. Again, we will honor the charges for valve plate kits and gaskets for $241.28. We will *not be able to honor any charges for refrigerant, nitrogen, etc.*

We would like to have an explanation on the following vendor invoices attached to this invoice:

Rawlinson #19574................$5.90
Electrical Supply Corporation
#33711 ..................... $7.86
Smith-Perry Electric Company #
DF 17971 ................... $7.71

These have not been included in the enclosed check.

Invoice #2403: The materials charges on this invoice are for a starter coil assembly ($8.26) *which we will cover* and for *crankcase heaters* ($11.43), which *we are not*

*able to cover.* It appears that someone forgot to remove the heater from the original compressor.

Invoice #2404: The charges from Keetch Metal Works for installing a metal collar for the condenser fan on unit #4 and for *installing sash locks on the unit doors all for $80.12 will be honored by us.*

*Labor*

We have reviewed thoroughly the labor you have charged to this project. We feel there are many hours charged that can be placed in the category of routine maintenance and warranty expense. Here is our breakdown:

From startup to December 31, 1966: During this period a total of 568 man hours were charged to this project by the George Linskie Company. Of these hours, *we feel that 241 man hours were the responsibility of your organization.* Items such as adding oil to compressors and replacing compressors improperly wired by electricians were charged to this project as above normal warranty labor. *This was not correct. Included, therefore, in the enclosed check* is *payment for 327 man hours* at $6.40 an hour for a total of $2,092.80.

From January 1, 1967 to March 5, 1967: In this case, our review shows 284 man hours at $6.40 an hour and 26 man hours at $12.80 an hour for a total of $2,150.40, which is included in the enclosed check.

From March 16, 1967 to April 25, 1967: The breakdown here results in 50 man hours at $6.40 an hour for a total of $320.-00 included in the enclosed check.

*We feel that this total payment of $5,-812.80 for charges against this project* through April 25, 1967 *is quite equitable.* Rest assured, we have taken a hard look at every single invoice and labor summary *to determine if the expense incurred was,* without question, *more than what should be expected of your organization under* *your normal warranty.* (Italics by the court).

Yours truly,

Theodore Sabo
Manager of Service

Miller-Picking Corporation
Johnstown, Pennsylvania"